Whitfield GRAVES, Appellant,

v.

UNITED STATES, Appellee.

No. 82–94.

District of Columbia Court of Appeals.

Argued En Banc March 13, 1984.

Decided Oct. 2, 1984.

See also, D.C.App., 472 A.2d 395.

Holly R. Skolnick, Public Defender Service, Washington, D.C., at the time the

briefs were filed, with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., at the time the briefs were filed, was on briefs, for appellant.

Thomas J. Tourish, Jr., Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, and Michael W. Farrell, John R. Fisher, and Amy S. Berman, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and NEBEKER, MACK, NEWMAN, FERREN, BELSON and ROGERS, Associate Judges, and KERN,[*] Associate Judge, Retired.

BELSON, Associate Judge.

Appellant was convicted by a jury of first-degree (felony) murder, robbery, and first-degree burglary[1] in connection with the strangling death of James R. Matthews. The primary question on this appeal is whether appellant was denied his constitutional right to a speedy trial by the lapse of 25 months between his arrest on those charges and the commencement of trial.[2] After carefully weighing all the relevant factors, we conclude that, despite the regrettably long delay, appellant was not deprived of his constitutional right. We affirm his convictions of felony murder and first-degree burglary. We reverse his conviction of robbery because it merged with his conviction of felony murder.

James R. Matthews was known in his neighborhood as a bootlegger who sold liquor from his home. On October 9, 1979, he was found in his apartment bound, gagged, and strangled to death. He had been robbed of money, liquor, a pistol and a radio.

Appellant and two other men, Alvin Poston and Larry Brown, were arrested later that month and charged with Matthews' murder and related offenses. The three were tried separately, and ultimately each was found guilty of first-degree (felony) murder and other offenses. Poston was tried first in February 1981, after the charges against him were severed; his conviction was affirmed by this court in July 1983. *Poston v. United States*, No. 81–626, Memorandum Opinion and Judgment (D.C. July 16, 1982). Brown was tried in May 1981 during the pendency of an interlocutory government appeal in appellant's case, and his conviction also was affirmed by this court in July 1983.

Appellant's trial began on November 5, 1981. On that day, the trial court, by written order, denied his motion to dismiss the indictment for lack of a speedy trial. The trial judge's ruling incorporated findings made by another judge on appellant's earlier motion to dismiss on speedy trial grounds.[3] While acknowledging that it was a close case, the trial court found there had been no deprivation of appellant's speedy trial right. Graves appealed, asking that we overturn that decision, and his subsequent conviction. A majority of a division of this court agreed with Graves that his speedy trial right had been denied. *Graves v. United States*, 467 A.2d 712 (D.C.1983). We granted the government's petition for rehearing en banc, and vacated the division's opinion. *Id.*

■ ■ The framework for analyzing a claim of speedy trial violation was established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Court identified

---

[*] Judge Kern was an Associate Judge at the time of the en banc argument. His status changed to Associate Judge, Retired, on May 25, 1984.

[1] D.C.Code §§ 22–2401, –2901, and –1801(a) (1981).

[2] Several questions concerning the conduct of the trial are also presented for our review. We treat them briefly at the end of this opinion.

[3] The procedural history of the case is discussed more fully below. The earlier trial court ruling was issued December 9, 1980, by Judge Pratt. The ruling that is before us on this appeal is that of Judge Wagner.

four factors which are to be examined: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. These factors are related and must be considered together with other relevant circumstances in "a difficult and sensitive balancing process." *Id.* at 533, 92 S.Ct. at 2193. This difficult task, of course, falls in the first instance to the trial court. In reviewing its determination, we are bound by its findings of fact unless they are plainly wrong or without evidence to support them. D.C.Code § 17–305(a) (1981); *see Wilson v. United States,* 444 A.2d 25, 29 (D.C.1982); *Reid v. United States,* 402 A.2d 835, 837 (D.C.1979). We may reverse, however, for errors of law. D.C.Code § 17–305(a) (1981). Mindful of these principles, we turn to a consideration of the four *Barker* factors.

*Length of Delay*

■ Delay is measured from the time the individual is formally accused. *See United States v. MacDonald,* 456 U.S. 1, 6–7, 102 S.Ct. 1497, 1500–1502, 71 L.Ed.2d 696 (1982) (*MacDonald II*); *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). For speedy trial purposes, arrest constitutes a formal accusation. *See MacDonald, supra,* 456 U.S. at 6–7, 102 S.Ct. at 1500–1502; *Dillingham v. United States,* 423 U.S. 64, 64–

65, 96 S.Ct. 303, 303–304, 46 L.Ed.2d 205 (1975) (per curiam). Appellant was arrested October 16, 1979, and his trial began November 5, 1981. Thus, as the trial court calculated, the total delay was approximately 25 months.

■ In our previous cases we have said, variously, that a delay of more than a year gives prima facie merit to a claim that an accused has been denied the right to a speedy trial,[4] creates a presumption of prejudice,[5] and shifts the burden to the government to justify the delay.[6] Moreover, the government's burden in arguing that no violation has occurred increases in proportion to the length of the delay. *Hedgepeth v. United States,* 124 U.S. App.D.C. 291, 294, 364 F.2d 684, 687 (1966); *Parks, supra,* 451 A.2d at 600–01; *Bethea, supra,* 395 A.2d at 790; *Branch, supra,* 372 A.2d at 1000. However, the more serious and complex the charge, the greater is the delay that will be tolerated. *Head v. United States,* 451 A.2d 615, 620 (D.C.1982); *Parks, supra,* 451 A.2d at 601; *Bethea, supra,* 395 A.2d at 790–91; *Branch, supra,* 372 A.2d at 1000.

The charges in this case were serious and the case was of moderate complexity. While the 25-month delay was substantial, we note that delays of roughly that length and longer have been countenanced by this court when all factors were considered.[7]

---

4. *See, e.g., Reese v. United States,* 467 A.2d 152, 159 (D.C.1983); *Williams v. United States,* 421 A.2d 19, 26 (D.C.1980); *Branch v. United States,* 372 A.2d 998, 1000 (D.C.1977).

5. *See, e.g., Tribble v. United States,* 447 A.2d 766, 768 (D.C.1982); *Shreeves v. United States,* 395 A.2d 774, 783 (D.C.1978), *cert. denied,* 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979); *United States v. Bolden,* 381 A.2d 624, 627 (D.C. 1977); *but see Reed v. United States,* 383 A.2d 316, 318–19 (D.C.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978) (no evidentiary presumption raised by delay of more than a year).

6. *See, e.g., Parks v. United States,* 451 A.2d 591, 600 (D.C.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983); *Tribble, supra,* 447 A.2d at 768; *Bethea v. United States,* 395 A.2d 787, 790 (D.C.1978).

7. *See, e.g., Jones v. United States,* 483 A.2d 1149 (D.C.1984) (34 months); *Taylor v. United States,* 471 A.2d 999, 1001 (D.C.1983) (31 months); *Head, supra,* 451 A.2d at 620 (30 months); *Warren v. United States,* 436 A.2d 821, 833 (D.C. 1981) (22 months); *Asbell v. United States,* 436 A.2d 804, 813 (D.C.1981) (34 months); *Gaffney v. United States,* 421 A.2d 924, 926 (D.C.1980) (33 months), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2026, 68 L.Ed.2d 330 (1981); *Williams, supra,* 421 A.2d at 26 (21 months); *Reid, supra,* 402 A.2d at 837 (21 months); *Strickland v. United States,* 389 A.2d 1325, 1329 (D.C.1978) (20 months), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 481 (1979); *Cates v. United States,* 379 A.2d 968, 970 (D.C.1977) (59 months).

On the other hand, delays of less than 25 months have on occasion been held excessive.[8] In *Barker* itself, the Supreme Court found that the defendant's constitutional right to a speedy trial had not been violated despite a delay of more than 5 years. *Barker, supra,* 407 U.S. at 516–18, 92 S.Ct. at 2185–2186. The Court found there was "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Id.* at 523, 92 S.Ct. at 2188.

*Reasons for the Delay*

■ *Barker* instructs us on the different weights to be given to different reasons for the delay.

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 531, 92 S.Ct. at 2192 (footnote omitted). While adhering to that general framework, this court has refined the analysis in one noteworthy respect. We have, in effect, created an intermediate category of "significant" delay for government actions deemed less culpable than deliberate foot-dragging to gain tactical advantage but more culpable than the neutral category exemplified by failure to advance trial dates due to court congestion. *See Day v. United States,* 390 A.2d 957, 968 (D.C. 1978) (failure of government to move for expedition of interlocutory appeal constitutes significant delay); *Bethea, supra,* 395 A.2d at 791–92 (substantial weight assigned to delay due to government indifference after numerous continuances and assertion of the right); *accord, Miller v. United States,* 479 A.2d 862 (D.C.1984)

(prosecution failure to take reasonable means to bring case to trial is significant delay).

■ It should be apparent that these attempts to distinguish between deliberate delay and significant delay and between significant delay and neutral delay are intended merely as rough benchmarks to guide analysis. They are not variables susceptible of being assigned arithmetical values. That is, we cannot and do not say that 1 month of deliberate delay equals 3 months of neutral delay, or that 6 months of significant delay equals 1 year of neutral delay. Some delay that is significant may be more so than other significant delay, and some delay that we term "neutral" or "institutional" may be more deserving of censure than other delay falling under that broad rubric. In short, these categories, like the four *Barker* factors themselves, have no "talismanic" qualities. *Barker, supra,* 407 U.S. at 533, 92 S.Ct. at 2193.

To evaluate the delay in this case we must review the procedural history of the case. As noted, appellant was arrested on October 16, 1979. He and codefendants Brown and Poston were indicated 3 months later, on January 16, 1980. Appellant was arraigned on January 30, 1980, and a first status hearing was set for March 20. The 5 months' delay up to that date the trial court termed "neutral delay." Neither party challenges that finding, and we see no reason to disturb it.

On March 20, 1980, the status hearing was continued to April 7 at the government's request, apparently in the hope that certain pretrial issues would "resolve themselves" by virtue of "potential dispositions." Appellant did not object. On April 7, 1980, the hearing was continued to April 24, again at the government's request. The prosecutor stated that he had been tied up in another case and had not had an opportunity to resolve the matters previously mentioned. Again appellant did not

---

**8.** *United States v. Ellis,* 408 A.2d 971, 972 (D.C. 1979) (22 months); *Bethea, supra,* 395 A.2d at 791 (19 months); *Branch, supra,* 372 A.2d at 999 (16 months).

object. This 1-month period between March 20 and April 24, 1980, the trial court found "attributable to the government." The trial court recognized, however, that the above-mentioned "neutral" delay of 5 months was also attributable to the government. Thus, it appears that the court believed the delay occasioned by the government-requested continuances should be weighed more heavily than the delay preceding the first status hearing date. We agree, although we think this period should be counted only slightly more heavily against the government; we do not view this delay as "significant."

On April 24, 1980, the first status hearing was held. The trial court severed codefendant Brown's trial from that of Poston and Graves, but denied Poston's and Graves' respective motions to sever their trials from each other. Turning to the scheduling of the joint trial, the court first suggested June 9, 1980. Poston's counsel indicated that the entire month of June and the first 2 weeks of July were bad for him. The court then suggested July 14. Appellant Graves' counsel said he had planned to begin a 3-week vacation that day, but that he would postpone it if the 14th could be set as a firm date. When Poston's counsel indicated that he might still be in trial that day in another case, the court suggested August 6. Poston's counsel planned to be at a convention in Dallas that week, however. Finally, the two defense lawyers, the prosecutor, and the court agreed that August 11, 1980, was an acceptable date for trial. The court stated that the codefendants' motion to suppress statements would be heard on the day of trial.

This 3½ month delay between April 24 and August 11, 1980, the trial court ruled was neutral delay. We agree, but we note that more than half of this delay was due to scheduling conflicts of codefendant Poston's counsel and, perhaps, the trial court's solicitude for Graves' counsel's va-

cation plans. We think it thus should be weighed less heavily than if the delay were entirely owing to the court's backlog.

On August 11, 1980, the prosecution was not ready for the suppression motions because a key government witness—a police detective—could not be located. Defendants Poston and Graves were ready, and both moved to dismiss for want of prosecution. The court denied the motions and continued the case to September 3, 1980. This delay of almost a month, the trial court ruled, was "attributable to the government." As with the other delays caused by government-requested continuances, this delay the court apparently found should be weighed somewhat more heavily than neutral delay. We agree.[9]

On September 3, 1980, the prosecution again had to request a continuance because the attorney assigned to the case had injured his knee and would not be available for about a week. No other prosecuting attorney could take over the case without several days to prepare, the government averred. Codefendant Poston's counsel thereupon renewed his motion to dismiss for want of prosecution. Appellant's counsel joined that motion and stated that he "also assert[ed] our right to a speedy trial." The trial court denied the motions but noted that it would not give a long continuance. However, when the schedules for the three attorneys and the court were compared, the next date acceptable to all parties for motions and trial was December 1, 1980. This 3-month delay between September 3 and December 1, 1980, the trial court also found "attributable to the government." Here we cannot agree. The roughly 1 week of delay actually due to the prosecutor's injury should not have been counted against the government at all, since the government showed justification for it. The rest of the 3 months' delay, as the transcript shows, was due solely to the

---

**9.** In *Barker,* the Supreme Court said that "a valid reason, such as a missing witness, should serve to justify appropriate delay." 407 U.S. at 531, 92 S.Ct. at 2192. Where the government, however, fails to give a satisfactory explanation for the absence of its employees it has not justified such delay.

institutional difficulty of scheduling a block of time when the court, the prosecutor and the two defense attorneys could all be available. Thus, this delay was at most neutral delay and should have been weighed lightly against the government.

On September 9, 1980, the government, by written motion, requested a 1-week continuance to December 8, 1980, because two police officers scheduled to testify for the government would be on "committed leave" from November 29 to December 5. Appellant filed a written opposition to the motion on September 22, arguing that the government had a duty to ascertain the availability of its witnesses before consenting to a firm trial date. The trial court granted the motion, scheduling motions and trial for December 11, 1980.

This 10-day delay from December 1 to December 11, 1980, the trial court ruled attributable to the government because it was due to the unavailability of two government witnesses. We agree that it was attributable to the government, but under the circumstances we believe that it should be counted only slightly more heavily than ordinary institutional delay.

On November 13, 1980, appellant filed a Motion to Dismiss Indictment for Lack of Speedy Trial. The trial court denied it by written order on December 9, 1980. We discuss the effect of appellant's assertion of his speedy trial right more fully below, but we note it here because of the Supreme Court's admonition in *Barker* that the four factors are related, 407 U.S. at 533, 92 S.Ct. at 2193, and our own holding in *Bethea, supra*, 395 A.2d at 791–92, that delay occurring after the assertion of the right is to be accorded more weight than delay occurring before any assertion.

On December 11, 1980, a hearing was held on appellant's motion to suppress statements made to police. The trial court granted the motion on the ground that the statements were the fruit of an illegal arrest. The next day, December 12, the prosecutor informed the court that the government intended to appeal the court's sup-

pression ruling. The court thereupon severed codefendant Poston's case from appellant's. On December 22, 1980, the government filed a notice of appeal from the December 11 suppression order, simultaneously certifying pursuant to D.C.Code § 23–104(a)(1) (1973) that the appeal was not taken for delay and that the evidence suppressed was a substantial proof of the charges against appellant. The notice of appeal did not request that the appeal be expedited, however. *See id.* § 23–104(e); *Day, supra*, 390 A.2d at 967–68.

On January 2, 1981, the court reporter certified a 138-page transcript as the official transcript of the December 11, 1980, hearing. On April 24, 1981, the record on appeal was filed in this court. On April 30, 1981, the transcript of the suppression hearing was filed in this court as a supplemental record and the case was docketed.

Meanwhile, on April 27, 1981, at a status hearing, appellant's counsel renewed his earlier motions to dismiss for want of prosecution and for lack of a speedy trial. Counsel accused the government of neglect with respect to the filing of the record on appeal. Counsel also noted that appellant had written a pro se motion to dismiss for want of prosecution which had not been received by the court. The court denied counsel's motions.

On June 12, 1981, the government moved to dismiss its appeal, stating that upon review of the record it had "determined not to proceed further with the appeal."

On June 17, 1981, another status hearing was held at which appellant's counsel renewed his motions to dismiss for want of prosecution and lack of speedy trial. The court denied the motions without prejudice to their renewal by written motion. The court also noted that it had received appellant's pro se motion to dismiss. Trial was scheduled for October 28, 1981, which apparently was the earliest court date available.

On July 2, 1981, this court issued a mandate dismissing the government's appeal.

The period from December 11, 1980, when the trial court granted appellant's motion to suppress statements, until July 2, 1981, when this court issued its mandate dismissing the government's appeal, was thus consumed by the interlocutory appeal. The trial court divided this almost 7-month period into three stages: from December 11, 1980, to April 30, 1981, when transcript of the hearing was filed in this court; from April 30 to June 12, 1981, when the government moved to dismiss the appeal, and from June 12 to July 2, 1981, when our mandate issued. The trial court, construing our opinion in *Day, supra,* 390 A.2d at 964–69, held that the first and third stages were neutral charges against the government, while the second stage was a "significant" charge against the government. We too find that a part of the 7-month period is significant, and other parts neutral, but analyze this phase of the delay somewhat differently.

In *Day, supra,* 390 A.2d at 965–66, this court held that the time on pretrial government appeals is to be included in calculating the length of delay in speedy trial claims. We reaffirm that holding. *Day* also enunciated a flat rule that unless the prosecutor moved to expedite the appeal, *see infra,* the entire period of the appeal was to be considered a "significant," rather than neutral, charge against the government. *Id.* at 968–69. We defined this "significant" charge as "an intermediate ... charge ... between neutral and intentional delay." *Id.* at 968.

As indicated above, we adhere to the concept of an intermediate category between neutral delay and intentional delay, and we continue to follow *Day* in labeling as "significant" delays caused by government indifference or neglect. However, we hold that *Day*'s rigid rule—that, in the absence of a motion to expedite, all pretrial government appeal time must be counted as a significant charge against the government—is not in conformity with the *ad hoc* approach to speedy trial claims mandated by *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. at 2191–2192. The government has been given explicit authority to appeal before trial orders suppressing evidence. D.C.Code § 23–104(a)(1) (1981). Since some delay in the trial necessarily attends invocation of the appellate process, we think it inappropriate to count all such time automatically as significant delay.

In order to minimize the delay from pretrial appeals, however, Congress mandated that "[a]ny appeal taken pursuant to [§ 23–104] either before or during trial shall be expedited." *Id.* § 23–104(e). While subsection (e) imposes strict deadlines on this court for hearing and deciding appeals taken *during* trial, it is silent as to the procedures to be followed in pretrial appeals. Our own rules partially fill this gap by directing the "[s]teps to be taken" by the parties and by court officials in appeals pursuant to § 23–104. *See* D.C. App.R. 4–III(a). This rule, which we set forth in full in the footnote,[10] generally

---

10. (a) STEPS TO BE TAKEN.
 (1) Counsel for appellant shall file his notice of appeal promptly with the Clerk of the Superior Court and shall advise the clerk of this court in person or by telephone of the forthcoming appeal.
 (2) Counsel for appellant shall designate or advise the Clerk of the Superior Court of the pleadings and documents necessary to be included in the record for use on appeal. The record shall include the notice of appeal and the order appealed from or docket entry with respect thereto if there be no written order.
 (3) Counsel for appellee shall counter-designate or advise the clerk of such additional plead-

ings and documents he deems necessary for inclusion in the record on appeal.
 (4) The Clerk of the Superior Court shall transmit the record promptly to the clerk of this court.
 (5) Counsel for appellant shall arrange to pay the necessary fees, if required, to the Clerk of the Superior Court and to the clerk of this court.
 (6) Counsel for appellant shall advise the clerk of this court of the telephone number where he may be reached and he shall advise the clerk of the name, address and telephone number of counsel for appellee.
 (7) Counsel for appellant shall submit such motion, memorandum of law, or other doc-

requires the parties to employ common sense measures to expedite the appeal. It also directs court officials to act promptly in handling the administrative details of the appeal such as the compiling and transmittal of the record. Implicit in the rule is that all those involved in the appellate process are to take responsibility to see that pretrial appeals receive priority—to the extent practicable—over routine post-trial appeals.[11]

■ In weighing the delay caused by a pretrial government appeal, then, the court must attempt to distinguish between delay that could not have been avoided by efforts to expedite and unreasonable delay resulting from the failure to expedite. Unavoidable delay should be considered neutral, and thus counted against the government to roughly the same degree as delay caused by court backlog. Unreasonable delay caused by failure to expedite the appeal should be considered significant.

■ As explained above, appellant's motion to suppress was granted on December 11, 1980. The next day the Assistant United States Attorney announced that the government intended to note an appeal of that ruling. The prosecution did not file its notice of appeal until December 22, however, which was the last day on which its filing was permitted. *See* D.C.App.R. 4–II(b)(1) & (4); Super.Ct.Crim.R. 45(a). While this 10-day delay may appear unnecessary, we think it not unreasonable to allow the United States Attorney's Office the full period of 10 days to make a considered decision *whether to file notice of*

appeal. Thus, we count this time as neutral delay.

■ The transcript was completed January 2, 1981, less than 2 weeks after the filing of notice of appeal. This delay was unavoidable, so we count it as neutral delay.

■ The record on appeal, including the transcript, was not filed in this court until April 30, 1981. Aside from the 138-page transcript, the record on appeal consisted of only 52 pages. The government offered no satisfactory explanation for the long delay in filing the record. We see no reason why the record should not have been filed within 2 weeks of the completion of the transcript. By that time, 5 weeks would have passed since the grant of the suppression motion, during the last 2 of which the transcript would have been available. We think this would have afforded the United States Attorney's Office a reasonable opportunity to decide whether to press the appeal.

■ When the record was filed with the court, notice was sent to the parties, stating that the government's brief was due 40 days hence. This is the time allowed for ordinary appeals. *See* D.C. App.R. 31. We think for an expedited appeal, however, the government should normally be expected to file in about 20 days. Thus, if the record had been filed by January 16, as we think it should have been, the government's brief should have been filed no later than February 5, 1981. The filing of the brief would have forced the govern-

uments which he believes to be essential for the court's consideration. Copies of pertinent documents filed in the Superior Court may be attached as exhibits to an appropriate motion or pleading filed with this court.

(8) Counsel for appellee shall comply with paragraph (7) and he is encouraged to appear in the office of the clerk of this court together with counsel for appellant to enable the clerk to schedule the appeal for a prompt appellate argument if the court deems argument necessary and advisable.

(9) The clerk shall advise the Chief Judge or appropriate division of this court of the

pendency of the emergency or expedited appeal in order that a prompt determination may be made with respect to the scheduling of argument or consideration of the case on the record and pleadings filed by counsel.

11. We stress that the prosecution's responsibility involves more than simply advising the appellate court of the filing of an appeal that is to be expedited under D.C.Code § 23–104(e). D.C. App.R. 4–III(a) contemplates that the prosecution is to take affirmative steps to ensure that bureaucratic delays are minimized.

ment to decide, as it ultimately did on June 12, whether to abandon the appeal. Since the government did not act within what we deem as reasonable time periods for an expedited appeal, we conclude that the 4 months' delay from early February to June 12, 1981, constitutes a significant charge against the government.

We agree with the trial court that it is commendable that the government did not pursue the appeal once it deemed it inappropriate to do so. Nevertheless, we also agree with the trial court that the government must bear the responsibility for not having made the decision sooner. We also note that the government must certify pursuant to D.C.Code § 23–104(a)(1) that its pretrial appeal is not taken for purposes of delay. Thus, it did no more than was required when it abandoned the appeal once it recognized that it was not worth pursuing.

■ We note also that appellant Graves appears not to have taken any steps to ensure that the appeal was expedited. We think this diminishes somewhat the weight of this delay, although not enough to remove it from the category of significant delay. *See Day, supra,* 390 A.2d at 970; *Ball v. United States,* 429 A.2d 1353, 1357 (D.C.1981).

■ This court granted the government's motion to dismiss the interlocutory appeal 1 week later, on June 19, 1981. We are distressed that this court's mandate was then not issued until July 2, 1981, almost 2 weeks later. We do not count this additional delay as a significant charge, however, because at the June 17, 1981, status hearing, the prosecutor informed the trial court that the government was moving to dismiss the appeal and that it was prepared to set a trial date. As noted above, the earliest court date that was agreeable to both sides was October 28, 1981. Since this 4½ month delay from June 12 to October 28, 1981, was in addition to the previous 20 months' delay and after appellant's assertion of his speedy trial right, it must be accorded some additional weight, as we recognized in *Day, supra,* 390 A.2d at 969. In *Day,* we held that the post-remand delay must be counted as a significant charge because the government was "no less responsible here than during the appeal." *Id.* We think that statement was somewhat exaggerated, for in selecting court dates there is less flexibility and certainly less control than in hastening the filing of an appellate record, especially where the transcript was prepared with dispatch. Since we do not believe this delay reflects government indifference or neglect, we consider it as remaining within the bounds of neutral delay, as the trial court found. *See Ball, supra,* 429 A.2d at 1356 (post-appeal delay considered neutral).

■ From October 28, 1981, to November 5, 1981, when appellant's trial began, the trial judge was unavailable because of another trial. We affirm the trial court's finding that this, too, was neutral delay.

We summarize our conclusions on the weight to be accorded the various delays in the chart set forth in the footnote.[12] We

12.

| Dates | Length of Delay (In Months) | Designation |
|---|---|---|
| October 16, 1979-March 20, 1980 | 5 | neutral |
| March 20, 1980-April 24, 1980 | 1 | neutral + |
| April 24, 1980-August 11, 1980 | 3½ | neutral − |
| August 11, 1980-September 3, 1980 | 1 | neutral + |
| September 3, 1980-September 10, 1980 | ¼ | justified |
| September 10, 1980-Dec. 1, 1980 | 2¾ | neutral − |
| December 1, 1980-Dec. 11, 1980 | ¼ | neutral + |
| December 11, 1980-Dec. 22, 1980 | ¼ | neutral |
| December 22, 1980-Jan. 2, 1981 | ½ | neutral |
| January 2, 1981-Feb. 5, 1981 | 1 | neutral |

| Dates | Length of Delay (In Months) | Designation |
|---|---|---|
| February 5, 1981-June 12, 1981 | 4¼ | significant |
| June 12, 1981-October 28, 1981 | 4½ | neutral + |
| October 28, 1981-Nov. 5, 1981 | ¼ | neutral |
| Total delay | 24½ | |
| Justified delay | ¼ | |
| Significant delay | 4¼ | |
| Neutral delay | 7 | |
| Neutral + | 6¾ | |
| Neutral − | 6¼ | |

conclude that ¼ month of delay was justified; 4½ months were significant delay attributable to the government; and approximately 20 months were neutral delay, divided almost evenly into three categories: that which is to be accorded additional weight, that which is merely institutional, and that which is to be accorded less weight. Thus, by far the greatest part of the delay was neutral time that was attributable to ordinary pretrial proceedings and to the heavy caseload of the trial court.

*Assertion of the Right*

The defendant's assertion of his speedy trial right, the Supreme Court has said, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker v. Wingo, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. To some extent we have already taken into account this factor in the above discussion of the reasons for the delay and the weight to be accorded the various intervals between arrest and trial. Some additional comments specifically directed to the assertion factor are in order here.

■ First, as discussed below, commencing 10 months after his arrest appellant repeatedly sought *dismissal* on speedy trial grounds. However, he nowhere declared that he wanted to be tried immediately, or as soon as reasonably possible. While invocation of this important right is not dependent on the uttering of court-ordained incantations, we have made it clear that the credibility of an accused's assertion of the right is enhanced by such a direct statement. *Bethea, supra,* 395 A.2d at 792; *Bolden, supra,* 381 A.2d at 628. And although the Supreme Court has held that the remedy for a violation of the speedy trial right is dismissal of the charges, *Strunk v. United States,* 412 U.S. 434, 439–40, 93 S.Ct. 2260, 2263–64, 37 L.Ed.2d 56 (1973), the right itself is the right *to be tried speedily.* Our decision in

these cases depends to a substantial degree on whether a defendant has made merely *pro forma* objections or motions, *see Barker, supra,* 407 U.S. at 529, 536, 92 S.Ct. at 2191, 2194, or really seeks a prompt trial, *see id.* at 536, 92 S.Ct. at 2195 ("barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial"). We bear this consideration in mind as we weigh appellant's assertions.

■ We proceed to address two arguments appellant has advanced with respect to his assertion of the right. Appellant contends that solely because of his pretrial incarceration he must be deemed to have asserted his right. In support of this proposition he cites *Parks, supra,* 451 A.2d at 601; *Strickland, supra,* 389 A.2d at 1331; *Branch, supra,* 372 A.2d at 1002; and *United States v. Calloway,* 164 U.S.App. D.C. 204, 210, 505 F.2d 311, 317 (1974). We think that those cases support the proposition that an incarcerated defendant will not be held to have waived his right to a speedy trial even if he fails to assert it explicitly. This is in accord with the Supreme Court's rejection in *Barker* of the so-called "demand-waiver" doctrine, which the Court defined as follows:

> The demand-waiver doctrine provides that a defendant waives any consideration of his right to speedy trial for any period prior to which he has not demanded a trial. Under this rigid approach, a prior demand is a necessary condition to the consideration of the speedy trial right.

*Barker, supra,* 407 U.S. at 525, 92 S.Ct. at 2189.

■ However, we reject any suggestion that the non-waiver presumed from a defendant's incarceration should be weighed as heavily as an actual demand for a

---

We use the terms "neutral +" to designate delays that are weighed somewhat more heavily, and "neutral –" to designate delay weighed somewhat less heavily.

Justified delay is not weighed against the government at all. "Neutral" delay, however, is attributed to the government.

speedy trial. We think the Supreme Court made this clear in *Barker* when it held that the defendnt's assertion of the right is one of the factors courts are to consider in assessing a speedy trial claim. This flexible approach, the Court said,

> would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection.

*Id.* at 529, 92 S.Ct. at 2191. *See also Strickland, supra,* 389 A.2d at 1331 (although it preserved defendant's right, the constructive demand arising from the fact of his incarceration came too late to weigh heavily in his favor).

 In a similar vein, noting that his counsel twice filed bond-review motions, appellant cites our statement in *Branch, supra,* 372 A.2d at 1002 (citing *Calloway, supra,* 164 U.S.App.D.C. at 210, 505 F.2d at 317), that "a motion for release is to be construed as the functional equivalent of a motion for speedy trial." To the extent that this language merely restates the Supreme Court's rejection of the demand-waiver rule, *see supra,* we reaffirm it. However, to the extent that it suggests that a motion for release should be accorded the same weight as an actual demand for a speedy trial, we find it to be in conflict with *Barker's* balancing approach, *see id.* 407 U.S. at 529, 92 S.Ct. at 2191; *see also Jones v. United States,* 456 A.2d 805 (D.C.1983), *denying petition for rehearing en banc* (separate statement of Nebeker,

J.), and accordingly disapprove it. Indeed, we believe that a motion for release, if accompanied by no other indication that the defendant desired a speedy trial, should normally be given only minimal weight as an assertion of the right. For it may very often be the case that a defendant desires immediate release from confinement, yet is not at all in a hurry to be tried.

We now review the record with regard to appellant's assertion of his right to a speedy trial. After he was arrested in October of 1979, appellant was held on a $2,500 cash or surety bond. On December 3, 1979, appellant moved for review of bond, alleging that he could not meet bond because he was too poor and that there were reasonable assurances that he would not flee. The court denied this motion on December 18, 1979. No mention was made in this motion that appellant desired a speedy trial. For the reasons explained above, we give it little weight as an assertion of the right.

On March 20, 1980, and April 7, 1980, a scheduled status hearing was delayed at the government's request. Appellant did not object to these continuances.

The status hearing was held on April 24, 1980. The trial court stated that appellant's motion to suppress statements would be heard on the day of trial.[13] The court suggested a trial date of June 9, 1980, but the earliest date on which all the attorneys could be present was August 11, 1980. Appellant did not object to that date or to the fact that his motion would not be heard until then.

On August 11, 1980, the government requested a continuance because a key prosecution witness could not be located. Appel-

---

**13.** We take note of the fact that it has become the practice, at least among some trial judges, to schedule suppression motions for the day of trial. We believe it will frequently prove advisable to schedule these motions in advance of trial. That way, if the motion is denied, the defendant has time to decide whether to plead guilty or to agree to a stipulated trial before the judge so as to preserve the claim of error in the denial of the motion. If the motion to suppress is granted, the delay from an interlocutory appeal by the government is reduced.

We recognize that such a procedure may not be possible, or desirable, in every case. The trial court must determine in each instance which schedule will best serve all the relevant interests.

lant's counsel joined in a motion by the codefendant to dismiss the case for want of prosecution. This was the first action by appellant objecting to delay. We think that, in light of appellant's apparent readiness for the motion and trial, this motion to dismiss can be taken as some indication of desire for a speedy trial. As noted above, however, the significance of this motion is diminished by appellant's failure to move in the alternative for an immediate trial.

On September 3, 1980, the date to which trial had been continued, the government again sought a continuance, this time because of an injury to the prosecutor assigned to the case. Appellant's counsel, who had announced he was ready for the suppression motion, joined a motion by the codefendant to dismiss for want of prosecution, adding, "[I] also assert our right to a speedy trial." This was the first direct reference to appellant's constitutional right to a speedy trial. As noted above, the trial court denied the motion and granted a continuance to December 1, 1980.

When the government moved for a short continuance because two police officers scheduled to testify were to be on leave, on December 1, appellant filed a short opposition, stating simply that the government had a duty to ascertain the availability of its witnesses before consenting to a firm trial date. The court granted a continuance to December 11, 1980.

On November 13, 1980, more than a year after arrest, but still a year before trial actually took place, appellant filed a Motion to Dismiss Indictment for Lack of Speedy Trial. The trial court denied the motion by written order on December 9, 1980. On December 11, 1980, after a hearing, appellant's motion to suppress his statements to police was granted.

On December 16, 1980, appellant again filed a motion to modify bond, which was denied by the trial court on January 13, 1981. At a status hearing on January 26, 1981, appellant asked the court to reconsider his bond-reduction motion in light of the time expected to be consumed by the government's pretrial appeal.

In a letter dated April 8, 1981, and received by the court on May 21, 1981, appellant complained that the government had "seized every opportunity" to delay, thereby denying him his right to a speedy trial. The trial court treated the letter as a pro se motion to dismiss for lack of speedy trial, and denied it.

At a further status hearing on April 27, 1981, appellant renewed his motions to dismiss for want of prosecution and for lack of speedy trial, claiming that the government had been neglectful in taking more than 4 months to have the record on appeal filed in this court. He also asked the court to reconsider his earlier motion to reduce bond in light of the additional delay. The court denied the oral motions, and suggested that appellant file a written motion if he had facts indicating delay by the government with respect to the interlocutory appeal.

We noted above that the government's failure to take steps to expedite the interlocutory appeal requires us to weigh as a significant charge against the government more than 4 months of the delay in early 1981. We note here that appellant Graves also failed to take action to expedite the appeal. Although at the January 26, 1981, status hearing he did inquire whether the notice of appeal had been filed, he never suggested any affirmative steps to speed the process. Indeed, when the court suggested the next status hearing be set for 3 months later, appellant affirmed that such a date appeared reasonable.

In *Day v. United States, supra,* 390 A.2d at 970, which was decided more than 2 years before the pretrial appeal in this case, we disapproved such inaction:

[A] defendant who truly wants a speedy trial can[not] be wholly excused for failure to press the government to seek expedition of its pretrial appeal. Even if entitled by statute to an expedited government appeal, a defendant should make that interest known. If we

do not hold him responsible for doing so, we will in effect be encouraging him to hold back during the appeal period, take his chances on eventual acquittal in the hope that the government's case will become stale during the hiatus, and then have a second opportunity for dismissal—for lack of a speedy trial. We do not believe that such a tactic should be automatically rewarded.

In contrast to the defendant in *Day*, appellant here had filed a speedy trial motion before the pretrial appeal. Nevertheless, as we explained above, D.C.App.R. 4–III(a) imposes obligations on the defendant as well as on the government regarding expedition of appeals. The defendant, where appropriate, is to counter-designate additional pleadings and documents he deems necessary for inclusion in the record on appeal, is to submit motions or memoranda of law which he believes to be essential for the court's consideration, and is "encouraged" to appear in the clerk's office with the government attorney to facilitate a prompt scheduling for appellate argument. *Id.*, subsections (3), (7) and (8).

 In light of these specific obligations, we expect a defendant who is genuinely interested in a prompt trial to be more active during this critical stage of the proceedings. While the rule imposes the primary obligation on the government to expedite the appeal, it certainly does not prevent a defendant from making inquiries about, for example, the preparation of the record on appeal. A simple letter might have prevented several months of delay. Accordingly, appellant's apparent failure to take any such steps diminishes the force of his claim that he sought an early trial.

After the government dropped its pretrial appeal, appellant continued to press for dismissal of his case on speedy trial grounds. He renewed his motion to dismiss orally on June 17, 1981, and in writing on August 14, 1981. The trial court, after hearing argument on September 21, 1981, took the motion under advisement. The court announced its decision to deny all pending speedy trial motions just before trial began on November 5, 1981.

In sum then, we acknowledge that appellant, through his counsel, raised the issue of speedy trial regularly after August of 1980. There is no doubt that appellant vigorously sought to have the charges against him dismissed. Moreover, there are some indications that appellant was not merely "building a record" but genuinely desired a prompt trial. For example, at the April 24, 1980, status hearing, appellant's attorney agreed to postpone a planned vacation if a firm trial date could be set in July 1980. Later, on September 3, 1980, when the parties were trying to reschedule the motions hearing, it was learned that the Assistant United States Attorney assigned to the case would be occupied with other trials for the month of October. Appellant's counsel suggested that perhaps another government attorney could be assigned to try this case.

 At the same time, however, appellant's passivity during the government's pretrial appeal and his repeated failure to move for prompt trial as an alternative to dismissal of the indictment introduce some ambiguity about whether appellant in fact desired to proceed swiftly to trial and thus diminish somewhat the weight we attach to his other acts of assertion of his right.

*Prejudice to the Defendant*

 The final factor, prejudice to the defendant, is to be assessed in the light of the interests which the speedy trial right was designed to protect, namely: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193. "Of these," the Supreme Court said in *Barker*, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id. Accord United States v. MacDonald,* 435 U.S. 850, 858, 98 S.Ct. 1547, 1551, 56 L.Ed.2d 18 (1978) (*Mac-*

*Donald I*); *Parks, supra,* 451 A.2d at 603; *Tribble, supra,* 447 A.2d at 771.

Citing language from *United States v. MacDonald, supra,* 456 U.S. at 7–8, 102 S.Ct. at 1501–1502 (*MacDonald II*), which cited *United States v. Marion, supra,* 404 U.S. at 320, 92 S.Ct. at 463, appellant suggests that impairment of the defense is no longer to be considered the "most serious" of the three interests protected by the speedy trial right.[14]

In *Marion,* which was decided 6 months before *Barker,* the Court stated:

> Inordinate delay between arrest, indictment and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.

404 U.S. at 320, 92 S.Ct. at 463. In *MacDonald II,* decided 10 years after *Barker,* the Supreme Court repeated the above language and added the following:

> The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

456 U.S. at 8, 102 S.Ct. at 1502.

■ When understood in the context in which they were made, that is, consideration of a challenge based solely on the Sixth Amendment speedy trial provision as

distinguished from the Fifth Amendment Due Process clause, these pronouncements do not conflict with the holding in *Barker* that impairment of the defense is the most important aspect of prejudice to a defendant. In *Marion,* the Court had to decide whether the speedy trial provision was applicable to delay between the end of the alleged criminal scheme and the bringing of formal charges. *MacDonald II* involved a similar question: whether the Sixth Amendment speedy trial right could be violated by delay between the dismissal of military charges and a subsequent indictment on civilian charges for the same offense. In both cases, the Supreme Court answered "no." "The Court held that the protection of the Sixth Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." *MacDonald II, supra,* 456 U.S. at 6, 102 S.Ct. at 1501 (quoting *Marion, supra,* 404 U.S. at 313, 92 S.Ct. at 459).[15]

In no way did the Supreme Court suggest in either *Marion* or *MacDonald II* that it is unimportant whether the passage of time has impaired a defendant's ability to defend himself at trial. The Court held merely that, until an individual is formally accused, that interest is protected by means other than the Sixth Amendment— primarily by statutes of limitations and the Due Process Clause.

■ *Barker* is not inconsistent with that understanding. We think that *Barker* in effect provided that once a person is formally accused his due process right to a fair trial—insofar as it is implicated by pretrial delay—may be treated as subsumed within the protection afforded by the Sixth Amendment's speedy trial guarantee.[16] We see no good reason for bifur-

**14.** This argument, which we reject, was accepted by the division majority. *Graves, supra,* 467 A.2d at 719 & n. 16; *id.* at 722–23 (Ferren, J., concurring).

**15.** The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."

**16.** This conception of *Barker* is confirmed by the Court's opinion in *United States v. Eight*

cating the *Barker* analysis by considering impairment of the defense under the Fifth Amendment and pretrial incarceration and anxiety under the Sixth Amendment. The fact that the speedy trial provision also protects other interests not protected by the Due Process Clause does not diminish the overriding importance to an accused of being able to present a defense unimpaired by the loss of evidence through unreasonable delay. We thus disagree with appellant's contention that *MacDonald II* signaled a retreat from the *Barker* holding that impairment of the defense is the most serious form of prejudice that might result from delay.[17]

In this case, appellant Graves concedes that his defense was not hampered by the delay. The absence of this most serious form of prejudice weighs heavily in our determination of whether appellant was deprived of his right. *See Parks, supra,* 451 A.2d at 604; *Tribble, supra,* 447 A.2d at 770–72; *Hilton v. United States,* 435 A.2d 383, 391 (D.C.1981); *Towles v. United States,* 428 A.2d 836, 842 (D.C.1981). It is not necessarily fatal to his claim, however.

*See Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (per curiam) (reversing state court ruling that prejudice to the defense at trial was essential to establish a federal speedy trial claim); *Barker, supra,* 407 U.S. at 533, 92 S.Ct. at 2193 (holding that none of the four factors is "either a necessary or sufficient condition" to a finding of deprivation of speedy trial right).

Appellant does assert generally that he suffered anxiety and concern from the delay in bringing him to trial. Some prejudice of this sort is inevitable simply by virtue of the existence of impending criminal charges; *see Barker, supra,* 407 U.S. at 534, 92 S.Ct. at 2194; *Strickland, supra,* 389 A.2d at 1331; *Rink v. United States,* 388 A.2d 52, 59 (D.C.1978), and is attendant upon pretrial incarceration, *see Smith v. Hooey,* 393 U.S. 374, 378–79, 89 S.Ct. 575, 577–78, 21 L.Ed.2d 607 (1969); *Tribble, supra,* 447 A.2d at 771; *Bowman v. United States,* 385 A.2d 28, 32 (D.C. 1978). Appellant's assertion of his speedy trial right also adds some weight to his claim of anxiety. *See Parks, supra,* 451

*Thousand Eight Hundred & Fifty Dollars in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). In that case, customs officials had seized $8,850 from a woman for violation of laws concerning declaration of currency upon entering the United States. A delay of 18 months occurred before the government filed a civil forfeiture action. The woman claimed the delay violated her due process right to a hearing at a meaningful time. The Court held that since her Fifth Amendment claim "mirror[ed] the concern of undue delay encompassed in the right to a speedy trial," it could best be analyzed according to the four-factor *Barker* test. *Id.* 103 S.Ct. at 2012. In concluding that the claimant was not denied due process of law, the Court placed substantial weight on the fact that she did not show that the delay prejudiced her ability to defend against the forfeiture. *Id.* 103 S.Ct. at 2014–15.

17. That *MacDonald II* did not alter the relative weight to be assigned to the various forms of prejudice is bolstered by the fact that in *MacDonald I,* a previous appeal in the same case, the Supreme Court quoted the *Barker* language about impairment of the defense being the most important interest of the accused. *United States v. MacDonald, supra,* 435 U.S. at 858, 98 S.Ct. at 1551. Had the Court in *MacDonald II* wished to

recede from that position, we think it would have said so in unambiguous terms.

Furthermore, appellant has not cited any case, nor are we aware of any, in which any court has suggested that *MacDonald II* wrought a fundamental change in speedy trial doctrine. Indeed, since *MacDonald II,* this court has issued several published opinions analyzing speedy trial claims, all of them employing the *Barker* analysis. *Miller v. United States, supra,* 479 A.2d 862 (D.C.1984); *Perkins v. United States,* 473 A.2d 841, 843 (D.C.1984); *Howard v. United States,* 473 A.2d 835, 840–41 (D.C.1984); *Taylor, supra,* 471 A.2d at 1001; *Reese, supra,* 467 A.2d at 158; *Adams v. United States,* 466 A.2d 439, 444 (D.C.1983); *Coles v. United States,* 452 A.2d 1190, 1192 (D.C.1982) (per curiam); *Head, supra,* 451 A.2d at 620; *Parks, supra,* 451 A.2d at 600; *Tribble, supra,* 447 A.2d at 768. Only two of these even cited *MacDonald II, Head, supra,* 451 A.2d at 621 n. 5, and *Parks, supra,* 451 A.2d at 602, neither to assert that the law had changed. In fact, *Parks, id.* at 603, and *Tribble, supra,* 447 A.2d at 771, repeated *Barker's* holding that impairment of the defense is the most serious of the three interests protected by the speedy trial right.

A.2d at 602; *Bethea, supra*, 395 A.2d at 793; *Ellis, supra*, 408 A.2d at 974–76 (Ferren, J., dissenting).

On the other hand, there is no contention here that the alleged anxiety and concern had a specific impact on appellant's health or personal or business affairs. *See Parks, supra*, 451 A.2d at 602; *Ellis, supra*, 408 A.2d at 973; *Bethea, supra*, 395 A.2d at 793. Moreover, appellant had prior experience with the criminal justice system, having been convicted three times previously, a factor which may have tended to minimize his anxiety. *See Parks, supra*, 451 A.2d at 602–03; *Ellis, supra*, 408 A.2d at 975 (Ferren, J., dissenting). *Compare Bethea, supra*, 395 A.2d at 793 (credibility of allegation of anxiety enhanced by fact that defendant had no prior criminal record).

 In summary, appellant has made some showing of prejudice due to anxiety, but not a strong one. His primary allegation of prejudice, to which we now turn, is that associated with his pretrial incarceration.

Appellant was incarcerated the entire 25 months between his arrest and trial. In order to determine the weight to give to the prejudice arising from that confinement, we must refer to the procedural background.

At the time of his arrest on October 16, 1979, appellant was on parole for a prior burglary conviction. As a result, the Parole Board on October 18, 1979, filed a "parole detainer," which directs corrections authorities to hold the parolee pending a determination whether to revoke parole.

On October 22, 1979, the trial court imposed a $2,500 cash or surety bond. It was appellant's inability to make that bond that resulted in his remaining incarcerated on the instant charges until trial. As recounted earlier, appellant several times moved to modify his conditions of release. On December 3, 1979, he filed a Motion for Review of Bond, which was denied. Thereafter, on November 21, 1980, the Parole Board lifted the detainer previously lodged.

Appellant then filed a Motion to Modify Bond on December 16, 1980, relying in part on the lifting of the detainer. That motion, and subsequent oral motions, were denied; consequently, appellant remained in jail.

The government, relying heavily on *Jefferson v. United States*, 382 A.2d 1030, 1032 (D.C.1978), argues that the filing of a parole detainer "breaks the chain of causation between the pretrial delay and any presumed prejudice." Since 13 of the 25 months' incarceration were "due to" the detainer, the government contends, the prejudice suffered by appellant is substantially diminished.

In *Jefferson*, as in this case, the defendant was accused of committing offenses while on parole. As a result of his arrest on the new charges, Jefferson's parole was *revoked* and he was transferred to Lorton penitentiary where, presumably, he continued serving time on his previous sentence. Jefferson then asserted a speedy trial violation by virtue of the delay in bringing him to trial on the new charges. With respect to the prejudice resulting from his pretrial incarceration, this court said that "the parole revocation breaks the nexus between the delay and the prejudice." 382 A.2d at 1032.

 We think the instant case is distinguishable from *Jefferson* in that here appellant's parole was never revoked, and thus he was not serving time on his earlier conviction. However, we believe there is some force to the argument that the prejudice from incarceration is lessened because of the existence of the detainer. While it is true that the detainer would never have been filed but for the charges in this case, it is also true that there would have been no detainer but for the previous conviction. The detainer, as well as the bail requirement, stood between appellant and his freedom. We conclude that the circumstance of the detainer diminished somewhat, although only slightly, the prejudice to appellant from incarceration on the instant charges.

Turning to the nature of the prejudice from pretrial confinement, we note that the Supreme Court has said:

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life, and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time.[18]

*Barker, supra,* 407 U.S. at 532–33, 92 S.Ct. at 2193 (footnote omitted).

Judged by these criteria, it would seem that appellant Graves suffered less prejudice from incarceration than others in his position might have. He is single and had been unemployed for several years before his arrest in this case. We are aware, of course, that appellant's confinement may have prevented him from forming family bonds and from obtaining employment. The point simply is that appellant was not in a position to assert certain aggravating factors that frequently accompany pretrial incarceration.

Nevertheless, it must be acknowledged that appellant's incarceration for 25 months pretrial is a substantial factor weighing in favor of his claim of violation of constitutional rights.

*Conclusion*

The balancing process mandated by *Barker v. Wingo* is particularly "difficult and sensitive" in this case. *See id.* 407 U.S. at 533, 92 S.Ct. at 2193. We believe that this case approaches the boundary between delay which offends the Constitution and that which does not. Nevertheless,

after a detailed review of the facts of this case in light of the relevant principles, we are persuaded that appellant was not denied his constitutional right to a speedy trial. Favoring dismissal of the indictment are: the substantial length of the delay; the fact that part of the delay was caused by the government's failure to expedite the appeal of the suppression ruling; appellant's repeated attempts to gain dismissal on speedy trial grounds; and the prejudice to appellant from his incarceration during the entire 25-month period from his arrest until trial. We find that these factors are outweighed, however, by the following: the fact that the bulk of the delay was due to neutral, institutional factors; appellant's own failure to seek expedition of the pretrial appeal; appellant's failure to demand a prompt trial, and the total absence of any impairment of appellant's ability to defend himself by virtue of the delay.[19]

## II

Appellant also claims error with respect to the conduct of his trial in three respects. He argues first that admission of a certain statement by government witness, Wayne Hall, violated the hearsay rule, and, even if technically admissible under a hearsay exception, violated appellant's constitutional right to confrontation. Next, he claims that the trial court's failure to give a cautionary instruction concerning appellant's alleged oral admissions constituted plain error. Finally, appellant contends that the prosecutor's rebuttal argument denied him a fair trial. The first two of these claims we have rejected previously in the appeal

---

**18.** While such time in jail before trial is fairly described as "dead time" in many respects, we note that in this jurisdiction it is credited as time served on one's sentence in the event of conviction and a sentence to incarceration. D.C.Code § 23–1322(e) (1981 & Supp.1984).

**19.** Because the *Barker* balancing test compels us to approach speedy trial claims on an *ad hoc* basis, *id.* 407 U.S. at 530, 92 S.Ct. at 2191–92, and because the *en banc* court is not bound by prior division opinions, *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), we have not stressed in this opinion a comparison to other of our speedy

trial decisions. We note our agreement, however, with the view expressed in the dissent to the division's opinion in this case, *Graves v. United States, supra,* 467 A.2d at 724, that the nearest precedent is *Day v. United States, supra,* 390 A.2d at 957. Our decision today, while overruling part of the *Day* opinion concerning interlocutory appeals, is consistent with *Day's* conclusion that the accused in that case was not deprived of his right to a speedy trial. For a comparison of the two cases, see Judge Belson's dissent in *Graves, supra,* 467 A.2d at 724. *But see id.* at 722 (Ferren, J., concurring).

of Larry Brown, originally appellant's code-fendant, who was tried separately, and so may be disposed of summarily. *Brown v. United States,* 464 A.2d 120 (D.C.1983). As to the third claim, we find no plain error in the rebuttal argument.

■■ Over defense objection, Wayne Hall was permitted to testify that he, appellant, Brown, Poston and a certain Carl Marks were together in Marks' apartment when it was reported on the television news that a man had been bound, gagged and strangled to death on E Street, N.E. At that, according to Hall, Poston jumped up and said, "I didn't know you all had killed the man." Appellant and Brown each responded by telling Poston to "shut up," Hall testified. Poston repeated his statement and then left the apartment. Appellant and Brown withdrew to another room and conversed in tones that Hall was unable to overhear.

In the appeal of Brown's conviction, we held that Poston's statement was admissible as an "adoptive admission." We said there, "[U]nder the circumstances of the case, it is to be presumed, that, according to ordinary human experience, [Brown] would naturally have repudiated the charge, if it were not true." *Brown, supra,* 464 A.2d at 125 (quoting *McUin v. United States,* 17 App.D.C. 323, 332 (1900)). The evidence at appellant's trial concerning Poston's statement was virtually identical to that in Brown's trial, and appellant was alleged to have responded in exactly the same manner as Brown. We follow our earlier decision in *Brown, supra,* 464 A.2d at 123–25, and affirm that this statement was admissible as an adoptive admission by appellant.

■■ Appellant makes an additional argument, not discussed in *Brown,* that admission of Hall's testimony about Poston's statement violated appellant's Sixth Amendment right to confront the witnesses against him. In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court examined the interplay between the hearsay rule and the Confron-

tation Clause. The Court held that in order to satisfy the Confrontation Clause, there must be a showing, first, that the declarant is unavailable and, second, that the statement bears adequate indicia of reliability. *Id.* at 65–66, 100 S.Ct. at 2538–2539. *Accord (Mark) Harrison v. United States,* 435 A.2d 734, 736 (D.C.1981) (en banc) (plurality opinion), and *id.* at 737 (Ferren, J., concurring). Appellant does not contend here that the first element was not met. Rather, his attack is directed at the reliability part of the *Roberts* test.

The Court in *Roberts* noted that it had applied the "indicia of reliability" requirement "principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" 448 U.S. at 66, 100 S.Ct. at 2539 (quoting *Mattox v. United States,* 156 U.S. 237, 244, 155 S.Ct. 337, 340, 39 L.Ed. 409 (1895)). In fact, the Court declared, "[R]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Roberts, supra,* 448 U.S. at 66, 100 S.Ct. at 2539. This court applied that teaching in *(Mark) Harrison, supra,* 435 A.2d at 736 (plurality opinion), and *id.* at 737 (Ferren, J., concurring), finding that the "spontaneous utterance" exception was so firmly rooted as to permit the inference of reliability.

We believe that the adoptive admission exception is likewise sufficiently firmly rooted to allow the inference of reliability. *See, e.g., (Herman) Harrison v. United States,* 281 A.2d 222, 224 (D.C.1971); *United States v. Bolden,* 169 U.S.App.D.C. 60, 70, 514 F.2d 1301, 1311 (1975); *Naples v. United States,* 120 U.S.App.D.C. 123, 126, 344 F.2d 508, 511 (1964). *See also* IV WIGMORE, EVIDENCE § 1071 (Chadbourn rev. 1972); McCORMICK, EVIDENCE §§ 269–70 (2d ed. 1972); FED.R.EVID. 801(d)(2)(B). Accordingly, we find no violation of the Con-

frontation Clause in the admission of Hall's testimony concerning Poston's statement.[20]

▆▆ Appellant also contends that it was plain error for the trial court not to caution the jury, sua sponte, " 'against trusting overmuch to the accuracy of' " Hall's testimony about the above conversations "since there are 'great possibilities of error in trusting to recollection-testimony of oral utterances, supposed to have been heard' " (quoting *Naples, supra,* 120 U.S.App.D.C. at 127, 344 F.2d at 512 (dictum) (citation omitted)). We rejected this same argument in *Brown, supra,* 464 A.2d at 125 n. 6, noting the trial court's other instructions concerning credibility and Brown's failure to request such an instruction. In this case, too, no such instruction was requested, and the trial judge's careful instructions on credibility and on the special care with which an informant's testimony should be examined ensured that there was no plain error affecting appellant's substantial rights. *See id.;* Super.Ct.Crim.R. 52(b).

▆▆ Finally, appellant contends that the prosecutor's rebuttal argument, to which appellant did not object, was so prejudicial as to deny him a fair trial. He complains in particular that the prosecutor's argument implied that defense counsel was trying to obscure the truth. We have examined the record in this regard, and are satisfied that appellant has failed to demonstrate plain error. *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc); *see Villacres v. United States,* 357 A.2d 423, 428 (D.C.1976).

▆▆ One final point requires mention. Appellant was convicted of robbery, felony murder committed in the course of the robbery, and first-degree burglary. He received a separate sentence for each of these three convictions, with the burglary sentence to run consecutively to the murder sentence and the robbery sentence to run concurrently with the other two. The government concedes that in light of *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and *Ball v. United States, supra,* 429 A.2d 1353, appellant's sentence on the robbery count must be vacated. For the reasons stated in *Brown, supra,* 464 A.2d at 125 n. 7, we remand to the trial court with instructions to vacate the conviction, not just the sentence, on the robbery count and to resentence appellant.

In all other respects, the judgment of the trial court is affirmed.

*So ordered.*

FERREN, Associate Judge, with whom MACK and NEWMAN, Associate Judges, join, dissenting.

The majority acknowledges that "this case approaches the boundary" of unconstitutional delay. *Ante* at 1105. In my judgment, the majority strains—unconstitutionally—for affirmance.

### I.

The plain facts are:

· Appellant was incarcerated in the D.C. Jail, unable to make a $2,500 bond, for the 25 months between arrest and trial. No other charges were pending, and appellant was not serving time for another offense. (A parole detainer relating to a previous conviction was lodged solely because of appellant's arrest in this case; it was lifted 13 months after arrest.)

· Appellant persistently asserted his speedy trial rights, beginning 10 months after his arrest (seven months after indictment).

· Although appellant filed a motion to suppress his confession within a month after his indictment, the trial court elected not to hear it for 10 months until trial was set to begin and appellant had been incarcerated for 14 months.

---

**20.** The government also raised, but cited no authority for, the argument that if the accused adopted the statement of another as his own, there is no issue of confrontation. We do not reach the merits of that argument.

· The court granted appellant's motion to suppress, triggering a government appeal to this court. The government subsequently moved to withdraw the appeal but waited five and a half months to do so after receiving the transcript of the suppression hearing. The total time required to note and withdraw the appeal was seven months. Trial did not begin for another four months.

· Once appellant had alerted the trial court and the prosecutor to his speedy trial concerns after 10 months had elapsed without progress—and four months remained before the scheduled hearing on the suppression motion—both the court and the prosecutor confronted an obvious Sixth Amendment problem: how to avoid unnecessary delay if the court were to grant defendant's motion to suppress, and the government were to note an appeal, while the defendant remained incarcerated. Presumably, the trial court could (and I believe should) have advanced the date of the suppression hearing. Alternatively, once the later-scheduled hearing took place and, as a consequence, the government's appeal went forward, the court could have granted appellant's motion to reduce bond (since the parole detainer by then had been lifted), in order to eliminate prejudicial incarceration from the anticipated delay. In any event, the prosecutor could have expedited the government's appeal. None of these happened. Indeed, the seven-month process from suppression hearing to withdrawal of the government's appeal took much too long. If properly expedited, this process should have taken no more than three months, for by the majority's own calculation, *ante* at 1096–1097, the government unaccountably delayed its appeal decision, after receiving the suppression hearing transcript, for at least four months. Accordingly, depending on whether the court should have advanced the date of the suppression hearing, the case should have been cleared for trial approximately 13 to 17 months after arrest.

· Finally, once the government moved to withdraw its appeal, the trial court promptly held a status hearing, even before this court's mandate had issued. At that time, appellant again asserted his Sixth Amendment right. The trial court, however, deferred trial for another four months. One month should have sufficed. Thus, trial should have begun 14 to 18 months, not 25 months, after arrest. The unjustified delay while appellant remained incarcerated on the present charges alone—having persistently asserted his speedy trial rights beginning 10 months after arrest—violated the Sixth Amendment.

## II.

Before elaborating the foregoing analysis, I believe it is important to note how the court system typically fails to perceive, prevent, and justly resolve speedy trial problems.

The trial court's denial of a speedy trial motion is appealable only after conviction. *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (*MacDonald I*). At that point, this court has only two choices: affirm the conviction or dismiss the indictment with prejudice. There is no intermediate sanction. *Strunk v. United States,* 412 U.S. 434, 440, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973); *Barker v. Wingo,* 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). For this reason, appellate courts commonly tend to rationalize affirmance of speedy trial appeals, for the sake of preserving convictions in a congested court system, when any objective observer would find the result distorted beyond fair application of the Supreme Court's criteria announced in *Barker.* As trial court backlogs increase, speedy trial protections decrease. Appellate judges become the agents of a public that wants to preserve convictions but is unwilling to finance an adequate, expeditious court system.

The problem, however, can be obviated by the trial courts, which typically—and unnecessarily—apply this same, all-or-noth-

ing analysis before trial. As to each pretrial speedy trial motion, the courts usually decide between denying the motion altogether or (very rarely) dismissing the indictment or information with prejudice. Instead, trial courts should consider an intermediate approach pretrial, in order to prevent a Sixth Amendment dismissal or compromise (as in this case) posttrial.[1]

More specifically, instead of either denying a speedy trial motion or dismissing the indictment with prejudice, the trial court can respond to a defendant's assertion of the right, for example, by advancing the case on the trial calendar, or by advancing other pretrial proceedings, such as a motion to suppress, which could lead to further delay if the defendant eventually prevails and the government appeals pretrial (as in this case). If such expedition is not practical and "the sole wrong done by delay is 'undue and oppressive incarceration prior to trial,' the remedy ought to be release from pretrial confinement," *e.g.*, by reduction of bond, for a defendant (as in this case) who is not imprisoned for other offenses. Amsterdam, *Speedy Criminal Trial: Rights and Remedied*, 27 Stan.L. Rev. 525, 535 (1975) (citation and footnotes omitted). Alternatively, "if prolongation of the 'anxiety' and other vicissitudes 'accompanying public accusation' is sufficiently extensive, the remedy ought to be dismis-

sal of the accusation without prejudice" to reprosecution.[2] *Id.* (citation and footnotes omitted). Accordingly, the most drastic pretrial remedy, dismissal with prejudice, is not the only option when speedy trial concerns are imminent. The trial court can reserve the dismissal remedy for cases of inordinately long delays, of impaired defense (such as death of a defense witness), or of unconscionable prosecutorial delay warranting a severe sanction. *Id.* at 534–37.

Obviously, absent a practical ability to advance the trial date, such intermediate remedies can have significant impacts on the public if the accused is considered dangerous and/or likely to flee. But, for predictably dangerous defendants, pretrial detention without bail is available with—it is important to note—a statutory guarantee of trial within 60 days (subject to exceptions). D.C.Code § 23–1322 (1981 & Supp. 1984); *United States v. Edwards*, 430 A.2d 1321 (D.C.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). And, for all other incarcerated defendants who assert their speedy trial rights, the court should be expected to assess, under the circumstances presented, whether to advance the trial or to reduce bond to a more affordable level,[3] in order to alleviate interim prejudice.

---

1. As a noted commentator has written:
 If ... the sixth amendment is to serve the limited function that it can serve to protect defendants against the several evils of oppressive trial delay, what is needed is the development of doctrines and procedures that effectuate other speedy-trial remedies than the remote, over-costly and hence grudgingly administered dismissal remedy. This development must begin with judicial recognition that there is more than one sixth amendment right to a speedy trial, and that the rights guaranteed by the sixth amendment against various consequences of trial delay call for differing forms of redress and measures of the permissible duration of criminal proceedings.
 Amsterdam, *Speedy Criminal Trial: Rights and Remedies*, 27 Stan.L.Rev. 525, 541 (1975).

2. *See, e.g., Bethea v. United States*, 395 A.2d 787 (D.C.1978) (high anxiety warranted dismissal of information against unincarcerated defendant

who had no previous experience with criminal justice system and unsuccessfully asserted right to speedy trial of uncomplicated, petty offense).

3. As noted in another context:
 The right to bail ... is often illusory. It is true that "under our local bail provisions ... money bond may not be used to assure detention," *Villines v. United States*, D.C.App., 312 A.2d 304, 306 (1973), and that bail accordingly "may be used only to prevent flight of the appellant or to assure his appearance for trial." *Jones v. United States*, D.C.App., 347 A.2d 399, 401 (1975); *accord, Villines, supra,* 312 A.2d at 306; *see* D.C.Code 1973, § 23–1321(a). Nonetheless, even when not constitutionally excessive, bail in fact may be set too high for the accused to afford. *See, e.g., Villines, supra,* at 305. Not uncommonly, an accused remains incarcerated before trial for months because of an unaffordable right to bail, coupled with uncorrectable congestion in the

Unless the public is willing to pay for an expeditious court system, the use of an intermediate pretrial remedy—*e.g.*, a reduction of bond or a dismissal without prejudice—is surely preferable to what commonly happens now: denial of pretrial relief, followed by conviction and appeal, resulting either in an affirmance that compromises Sixth Amendment rights or in a dismissal of the indictment, with prejudice, because the speedy trial right, when asserted, has been ignored each step of the way.

With this background, I turn to the case before us.

### III.

Appellant Graves, Alvin Poston, and Larry Brown were charged with first-degree murder/felony murder, first-degree burglary, and robbery. Although jointly indicted, each eventually received a separate trial.[4]

#### A.

##### (1)

As to appellant's speedy trial claim, four time phases are identifiable. During Phase I (October 16, 1979—August 11, 1980), his case proceeded in typical fashion: arrest and incarceration (10/16/79), parole detainer lodged (10/18/79), $2,500 bond set (10/22/79), bond review motion denied (12/3/79), indictment (1/16/80), arraignment (1/30/80), filing of a motion to suppress statements (2/15/80), status hearings continued at government request (3/30/80, 4/7/80), and status hearing held (4/24/80) at which codefendant Brown's case was severed and appellant's and codefendant Poston's joint trial was scheduled for Au-

gust 11, 1980—a period totaling ten months from the arrest.[5]

##### (2)

Speedy trial concerns developed during the next four months in Phase II (August 11, 1980—December 11, 1980), when the government received three continuances over defense objection—one because the prosecutor was injured and unavailable, and two because police witnesses were unavailable. Trial eventually was set for December 11, 1980, fourteen months after arrest. Because more than a year had passed since the date of arrest, appellant presumptively had been denied his Sixth Amendment right to a speedy trial. *Parks v. United States*, 451 A.2d 591, 600 (D.C. 1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983); *Branch v. United States*, 372 A.2d 998, 1000 (D.C. 1977). During this four-month period, moreover, appellant—who remained incarcerated—persistently had asserted his speedy trial rights in a variety of ways. He twice moved to dismiss the indictment for lack of prosecution (8/11/80, 9/3/80); he alternatively "assert[ed] our right to a speedy trial" (9/30/80); he then moved to dismiss for lack of a speedy trial (11/13/80); and, after the parole detainer had been lifted (11/21/80), he moved for reduction of bond (12/3/80). The court denied all motions.

##### (3)

On December 9, 1980, before trial was to begin at the outset of Phase III (December 11, 1980—July 2, 1981), the trial court granted appellant's motion (filed 2/15/80)

courts (it is said) and other systemic delays falling short of Sixth Amendment speedy trial violations. *See, e.g., United States v. Calhoun*, D.C.App., 363 A.2d 277, 278–82 (1976); *United States v. Jones*, D.C.App., 254 A.2d 412, 414 (1969). *United States v. Edwards*, 430 A.2d 1321, 1355 n. 5 (D.C.1981) (en banc) (Ferren, J., concurring and dissenting), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982).

4. The facts underlying the arrests are related fully in *Brown v. United States*, 464 A.2d 120

(D.C.1983), where we affirmed the conviction of codefendant Brown. We also affirmed codefendant Poston's conviction. *Poston v. United States*, No. 81–626 (D.C. July 16, 1982). Brown was tried within 17 months of arrest; Poston's trial began within 14 months. Neither presented a speedy trial claim on appeal.

5. For purposes of evaluating appellant's speedy trial claim, the pertinent time frame begins with arrest. *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (per curiam).

to suppress his confession. On December 12, the government announced its intention to appeal that ruling. Codefendant Poston's case was therefore severed, and appellant's trial was deferred. Appellant promptly moved once again for reduction of bond (12/16/80), which the court denied (1/13/81). In the meantime, the government had received the transcript of the suppression hearing (1/2/81) but did not file it in this court for almost four months (4/30/81). Nor did the government file a brief or ask this court to expedite the appeal, *see* D.C.Code § 23–104(e) (1981); D.C. App.R. 4 III,[6] as we require unless the government is willing to have the pretrial appeal period count as a "significant" charge against the government for speedy trial purposes. *Day v. United States*, 390 A.2d 957, 969 & n. 6 (D.C.1978).

While the government was apparently doing nothing, appellant himself wrote a long, handwritten letter to the trial court (dated 4/8/81, mailed 4/14/81) "attempting to secure a fair and speedy trial" and complaining about the "still further delay" caused by the government's appeal. Soon thereafter, defense counsel moved, again unsuccessfully, for reduction of bond and for dismissal on speedy trial grounds (4/27/81). Upon learning that the trial court had not received appellant's letter, counsel forwarded a copy (5/21/81).

On June 12, 1981, the government moved this court to dismiss the appeal—six months after the appeal had been noted and five and a half months after the government had received the transcript of the suppression hearing. At a trial court status hearing on June 17, counsel announced his intention to file another speedy trial motion (since the trial court apparently treated appellant's letter as a *pro se* motion and denied it). On June 19, this court dismissed the government's appeal. Our mandate was issued on July 2, 1981—almost 21 months after the arrest.

(4)

On August 14, 1981, during Phase IV (July 2, 1981—November 5, 1981), appellant again moved for a speedy trial dismissal. The trial court took the motion under advisement and deferred trial until October 28. After several continuances because of the trial court's unavailability, the court denied appellant's speedy trial motion on November 5, 1981, calling the ruling a "close one." Trial began that day, almost 25 months after appellant's arrest. Appellant had been incarcerated the entire time, including almost 12 months after the parole detainer had been lifted. Under the circumstances, Phase IV, like Phase III, constitutes a "significant" charge against the government, *id.*, since it began 21 months after arrest, it followed significant delay during the government appeal, appellant once again asserted his speedy trial right, and the court failed to expedite.

**B.**

In applying the Supreme Court's "balancing test, in which the conduct of both the prosecution and the defendant are weighed," *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, we must consider four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.*

On the facts here, there were 14 months of delay chargeable to the government by the end of Phase II, although it is so-called neutral, institutional delay attributable primarily to court congestion. *See Parks*, 451 A.2d at 601. Nonetheless, by the end of this period of more than a year, the burden had shifted to the government to disprove a speedy trial violation. *See id.* at 600; *Branch*, 372 A.2d at 1000. Indeed, by then appellant had asserted his speedy trial rights five times, in one form or another, over a four month period. *See Miller v. United States*, 479 A.2d 862, 866 (D.C. 1984) (motion for release); *Reese v. United*

**6.** Effective January 1, 1985, this rule was amended in respects not relevant here and re- numbered D.C.App.R. 4(c).

*States,* 467 A.2d 152, 159 (D.C.1983) (motions for bond reduction and dismissal); *Parks,* 451 A.2d at 601 (motions for review of conditions of release, advancement of trial date, and dismissal); *Tribble v. United States,* 447 A.2d 766, 770 (D.C.1982) (motion for bond reduction); *Branch,* 372 A.2d at 1002 (motion for release); *United States v. Calloway,* 164 U.S.App.D.C. 204, 209–10, 505 F.2d 311, 316–17 (1974) (motion for release). Furthermore, appellant was prejudiced by continuous incarceration. *See Barker,* 407 U.S. at 532–33, 92 S.Ct. at 2193.

On the other hand, the delay to date was excusable to some extent because of (1) the gravity and accompanying complexity of a multiple-defendant murder case (although, once severed, appellant's trial took only three days), *see id.* at 531, 92 S.Ct. at 2192,[7] and (2) the fact that, as to prejudice, appellant was subject to a parole detainer until virtually the end of Phase II, was a veteran of the criminal justice system with no manifest anxiety, and was not noticeably affected by the delay in the preparation of his defense. *See Parks,* 451 A.2d at 602–04. As of the 14-month end of Phase II, therefore, the government could sustain its burden of proving no speedy trial violation.

Phases III and IV—eleven additional months—are different. In the first place, " 'the longer the time between arrest and trial, the heavier the burden of the Government in arguing that the right to a speedy trial has not been abridged.' " *Day,* 390 A.2d at 966 (quoting *Hedgepeth v. United States,* 124 U.S.App.D.C. 291, 294, 364 F.2d 684, 687 (1966)). Second, the government's showing "must 'convincingly outweigh' the

appellant's assertions." *Id.* at 970 (quoting *United States v. Rucker,* 150 U.S.App.D.C. 314, 316, 464 F.2d 823, 825 (1972)). Finally, these eleven months represent "significant" delay chargeable against the government, *see id.* at 969, because the prosecutor and the courts failed to expedite. As explained earlier, this entire period should have covered no more than four months—three months for the withdrawn appeal and one month until trial after remand.

By at least mid-January 1981, a month into Phase III, the prosecution had to be aware that its appeal of the pretrial suppression ruling was marginal. By then, too, the trial court was aware that appellant had continually been asserting his Sixth Amendment rights since mid-August 1980 and that the government had the burden of disproving a speedy trial violation. Because the prosecution and the court had not advanced the pretrial suppression hearing—a potentially costly mistake—they were confronted in mid-January by several critical facts: appellant's continuous incarceration for 15 months; the lifting of his parole detainer in November 1980; two denied motions to reduce bond in December 1980 (one soon after the parole detainer had been lifted, the other four days after the government had announced its intention to appeal the suppression ruling); three denied motions to dismiss for want of prosecution or for lack of a speedy trial; and one denied motion "assert[ing] our right to a speedy trial."

Therefore, in order to remedy the presumptive Sixth Amendment violation, the prosecutor and the trial court had only two

---

**7.** As to the reasons for delay, the Supreme Court has stressed the importance of "the peculiar circumstances of the case." *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531, 92 S.Ct. at 2192. This is not to say that the Sixth Amendment automatically permits a greater delay in trying accused murderers than in prosecuting alleged pickpockets. Rather, the Court said that the more grave and complex the offense, the more likely it is that the case will

require protracted preparation and pretrial rulings which typically—and justifiably—take more time than prosecution of a simple misdemeanor. The gravity and complexity of multiple felony charges against several codefendants, for example, may weigh significantly in the government's favor in its effort to disprove a speedy trial violation when a year or more has elapsed since arrest. But the government still must justify the delay—an increasing burden as time elapses—by reference to the "peculiar circumstances of the case," *id.* at 530–31, 92 S.Ct. at 2192, not to the nature of the charges as such.

options: (1) they could collaborate on a responsive intermediate sanction—bond reduction—to eliminate the principal prejudice, or (2) if still committed to appellant's continued incarceration, *but see supra* note 3, they could keep the bond intact, and the prosecutor could see to it that the government appeal was expedited. Instead, while appellant remained incarcerated, the prosecutor and the courts took 11 months, of which seven were absolutely unjustifiable, to make the decision for withdrawal, to accomplish the remand, and to set the eventual trial date.

I believe a fair application of the *Barker* criteria inescapably leads to a conclusion that the government's nonshowing in support of eleven months of "significant delay" (including seven that were absolutely unjustifiable) does not "convincingly outweigh" the persistently asserted speedy trial claim of this continuously incarcerated defendant/appellant.

### IV.

The majority takes at least three major, unjustifiable shortcuts to reach its result.

### A.

First, the majority minimizes appellant's efforts to assert his speedy trial rights because he often moved to *dismiss* for lack of a speedy trial or for want of prosecution but never moved *for* a speedy trial. *See ante* at 1098. Significantly, the majority's premise is not correct. On September 3, 1980, appellant both moved to dismiss for want of prosecution and, alternatively—and affirmatively—"assert[ed] our right to a speedy trial." Only after the denial of that motion did appellant begin to seek the more severe, dismissal remedy on speedy trial grounds (11/30/80). As the delay got worse and worse, therefore, appellant's four motions to dismiss between September 1980 and August 1981 were completely understandable and should have been construed, in fairness, to embrace requests for all lesser Sixth Amendment remedies. *Commonwealth v. Gove,* 366 Mass. 351,

363, 320 N.E.2d 900, 909 (1974) ("[W]e view the defendant's motion to dismiss as the functional equivalent of a specific demand for speedy trial.... It is sufficiently emblematic of concern."); *see Cain v. Smith,* 686 F.2d 374, 384 (6th Cir.1982).

Similarly, the majority's response to appellant's motions for bond review, an intermediate speedy trial remedy, is terribly wrong. The majority finds only a "minimal" assertion of the right, *ante* at 1099, and accords "little weight" to it, *ante* at despite the fact that the two bond review motions in December 1980 after the parole detainer had been lifted and again after the suppression ruling—and after appellant had been incarcerated for 14 months—were nicely tailored to appellant's claimed prejudice from the delay: incarceration. *See Miller,* 479 A.2d at 866; *Reese,* 467 A.2d at 159; *Parks,* 451 A.2d at 601 & n. 21; *Tribble,* 447 A.2d at 770; *Branch,* 372 A.2d at 1002; *Cain,* 686 F.2d at 384; *Amsterdam, supra,* at 535. Again on April 27, 1981, appellant sought a bond reduction; again, he was denied; and again, a majority of this court fails to see the Sixth Amendment implications.

The majority accordingly belittles appellant's persistent request for the minimum relief available (bond reduction), then ignores appellant's early, affirmative request for a speedy trial (which was denied), and finally faults him for subsequently requesting only the maximum relief available (dismissal). That is simply reaching for a result—ineffective assertion of the right to a speedy trial—that the record obviously does not support. It is hard to imagine more persistence.

### B.

The majority also unfairly makes light of appellant's prejudice from incarceration. My colleagues first note *Barker's* summary of the three forms of prejudice from pretrial delay: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the defense will be impaired." 407 U.S. at 532,

92 S.Ct. at 2193. They next point out the Court's statement that, "[o]f these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Finally, they stress that appellant does not claim his 25 months in jail prejudiced preparation of his defense. Primarily for that reason the majority finds minimal prejudice.

The majority accordingly ignores the Supreme Court's emphasis, both before and after *Barker*, on the prejudice inherent in pretrial incarceration and on the significance of such prejudice for Sixth Amendment claims. In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Court said that "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." *Id.* at 320, 92 S.Ct. at 463. More recently, the Court reaffirmed that language from *Marion:*

> The Sixth Amendment right to a speedy trial is thus *not primarily intended to prevent prejudice to the defense caused by passage of time;* that interest is protected primarily by the Due Process Clause and by statutes of limitations. *The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial,* to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald (MacDonald II)*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982) (emphasis added). Although *Marion* and *MacDonald II* focused on preindictment delay and concluded that the relevant concern is Fifth Amendment due process, not the Sixth Amendment guarantee of a speedy trial,

the analysis in those cases does not diminish the Court's expression of Sixth Amendment values. Furthermore, if my colleagues in the majority are correct that *Barker* can be said to "subsume" within the Sixth Amendment a paramount due process concern for a fair trial without delay prejudicial to defense preparation, *see ante* at 1102, this does not preclude a paramount Sixth Amendment concern for "minimiz[ing] the possibility of lengthy incarceration prior to trial...." *MacDonald II*, 456 U.S. at 8, 102 S.Ct. at 1502. In any event, however these three Supreme Court cases should be reconciled, a defendant's incarceration—deprivation of liberty—is archetypical prejudice to which speedy trial guarantees are directed. Appellant was incarcerated for 25 months, of which 11 months were "significant" delay (and at least seven months were absolutely unjustifiable).[8] The majority's effort to diminish the impact of that deprivation because appellant "is single and had been unemployed for several years before his arrest in this case," *ante* at 1105, is self-evidently absurd.

### C.

Finally, citing *Day*, 390 A.2d at 970, the majority makes much of the fact that appellant did not press the government and this court to expedite the pretrial appeal. The majority again ignores the record. In *Day*, appellant did not assert his speedy trial claim until after this court had decided the government's pretrial appeal (which had been delayed awaiting disposition of an appeal in another case). In contrast, appellant here asserted his speedy trial rights on four occasions before the suppression hearing and the government appeal. Moreover, unlike *Day*, this is not a case in which this court was effectively seized of a record, transcript, briefs, and argument. It would have been virtually pointless for appellant to have moved this court to expedite; ap-

---

8. Arguably, eleven months were absolutely unjustifiable, since the trial court should have advanced the suppression hearing once appellant asserted his speedy trial rights in August 1981. *See supra* Part I.

pellant could only effectively express his desire for expedition to the prosecutor. That desire was not a mystery while the prosecutor pondered what to do about the government appeal.

Furthermore, as soon as the government's appeal was announced, appellant moved for a bond reduction. He did so again later, while the appeal was pending. These were wholly proper assertions of a Sixth Amendment right, specifically directed at the claimed prejudice. Appellant was ignored—both then and now.

Finally, while the appeal was pending, appellant also moved the trial court to dismiss on speedy trial grounds and even sent a personal letter to the trial court complaining of the delay. Technically, the motion, as well as appellant's letter, should have been tailored instead for relief from this court, since the trial court temporarily lacked jurisdiction to entertain such a motion. But the real answer is not that appellant defaulted but that the prosecutor received still additional word that appellant desired the government to expedite its appeal, and that the trial court, knowing of appellant's oft-expressed concerns, should have directed appellant and the prosecutor to this court, rather than leave it to us—after conviction—to say whether appellant really did, or did not, want expedition.

I cannot join in the majority's hypertechnical rationalizations to ignore appellant's persistent course of action.[9]

### V.

There is an obvious conflict between the public's understandable desire to uphold the conviction of a murderer and this court's obligation, as an independent branch of government, to protect constitutional rights on a consistent, principled basis. If this case had concerned only a robbery, I cannot help believing the result would have been different. The Sixth Amendment right to a speedy trial, how-ever, does not distinguish between murderers and robbers, no matter how much we may want it to do so.

Respectfully, therefore, I must dissent.

---

**9.** *Day* is also distinguishable by the fact that appellant in that case did not claim prejudice from 32½ months of incarceration of which 18 were attributable to disposition of a government appeal. His only expressed concern—prejudice to defense preparation—was not established.