**Alvin H. WYNN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–864.**

District of Columbia Court of Appeals.

Argued Oct. 27, 1987.
Decided March 9, 1988.

Calvin Steinmetz, with whom Anita Isicson, Washington, D.C., was on the brief, for appellant.

Mary Lou Leary, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Robert Reed, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN and FERREN, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge.

Appellant was tried by a jury for mayhem while armed [1] and convicted of assault with a dangerous weapon,[2] which the trial court instructed was a lesser-included offense of mayhem while armed. Appellant contends the trial court's jury instructions were erroneous because assault with a dangerous weapon is not a lesser-included offense of mayhem while armed. In addition, appellant contends that the twenty-four month delay between his original indictment and his trial violated his Sixth Amendment right to a speedy trial.[3] We conclude that on the facts of this case, assault with a dangerous weapon is a lesser-included offense of mayhem while armed, and after balancing the relevant consid-

---

1. D.C.Code §§ 22–506, –3202 (1981 & Supp. 1987).

2. *Id.* § 22–502 (1981).

3. Appellant also contends his motion for acquittal should have been granted. This contention is without merit. *See infra* note 15.

erations, we find no violation of appellant's right to a speedy trial. Accordingly, we affirm.

## I.

The evidence showed that on August 4, 1982, appellant and complaining witness Jenkins, fellow inmates at the District of Columbia Jail, became involved in a dispute concerning use of the jailhouse telephone. Their disagreement escalated to fisticuffs,[4] and Jenkins emerged from the fracas with a pencil lodged deeply in one of his eyes, necessitating an ophthalmectomy.

Based on this incident, a grand jury indicted appellant on March 23, 1983, on charges of mayhem while armed and malicious disfigurement while armed.[5] He was arraigned on April 23, 1983, and trial was scheduled for September 23, 1983. On the date of trial, the government moved for a continuance without objection from appellant. The trial date was rescheduled for February 29, 1984, at which time the government was unprepared to go forward because complaining witness Jenkins did not show up for trial. Accordingly, appellant's motion to dismiss for want of prosecution was granted.

On May 2, 1984, appellant was reindicted for the same incident, and trial was scheduled for October 19, 1984. On the date of trial, appellant's case was continued to October 22, 1984, because the court was engaged in another trial. On October 22, 1984, both sides were prepared to proceed, but the court remained preoccupied with another case. Appellant's trial was rescheduled for February 12, 1985, and assigned to a new judge.

Appellant's trial began as scheduled on February 12, 1985. Before the jury was sworn, however, appellant complained of inadequate representation by appointed

counsel and moved to have new counsel appointed and the trial continued. The trial judge was willing to grant appellant's requests, but admonished that appellant would have to "forget the speedy trial argument." Trial was rescheduled for March 19, 1985. At appellant's request, a status hearing was held on March 19, 1985, and trial was set for April 2, 1985. Appellant was finally tried on April 2, 1985, more than twenty-four months after his original indictment.

The court instructed the jury on mayhem while armed and assault with a dangerous weapon, deeming the latter to be lesser-included in the former. The jury returned a verdict of guilty on assault with a dangerous weapon.

## II. SPEEDY TRIAL

Our analysis of appellant's contention that he did not receive a speedy trial as guaranteed by the Sixth Amendment begins with a consideration of the guidelines enunciated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker,* the Court stated that the right to a speedy trial does not lend itself well to hard and fast rules regarding the permissible length of delay and the duty of the defendant to demand justice with alacrity, and instead prescribed the implementation of a balancing test on an *ad hoc* basis. *See id.* at 530, 92 S.Ct. at 2192. Accordingly, the four factors identified in *Barker* as particularly relevant to speedy trial scrutiny—*viz.,* length of delay, the reasons for the delay, the defendant's assertion of the right, and prejudice to the defendant, *id.* —have been repeatedly applied by this court.[6] These factors are related and must be considered together with other relevant circumstances in a difficult and sensitive balancing process. *Graves, supra* note 6, 490 A.2d at 1091

---

**4.** There was conflicting evidence regarding whether and to what extent appellant had been the aggressor in the altercation.

**5.** The malicious disfigurement charge was dismissed on December 7, 1983.

**6.** *See, e.g., Graves v. United States,* 490 A.2d 1086, 1091 (D.C.1984) (en banc), *cert. denied,*

474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986); *Sell v. United States,* 525 A.2d 1017, 1019 (D.C.1987); *Jackson v. United States,* 503 A.2d 1225, 1227 (D.C.1986); *Miller v. United States,* 479 A.2d 862, 865 (D.C.1984); *Parks v. United States,* 451 A.2d 591, 600 (D.C.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983).

(quoting *Barker, supra,* 407 U.S. at 533, 92 S.Ct. at 2193).

Appellant was indicted on March 23, 1983, and was eventually tried on April 2, 1985. The relevant period is thus slightly more than twenty-four months.[7] Appellant's claim thus has prima facie merit, and a presumption of prejudice to him exists. *See Graves, supra* note 6, at 1091 & n. 5. The actual length of the delay nearly equals that which the *Graves* court termed "substantial," *id.* at 1091, and the charges were not complex. *Compare id.* (charges of first-degree felony-murder, robbery, and first-degree burglary deemed "moderately complex") *with Sell, supra* note 6, 525 A.2d at 1019–20 (charges of corrupt influence, sodomy, and obstruction of justice deemed "rather simple").

Different reasons for delay of a trial are to be assigned different weights.[8] *Id.* at 1020. Nothing in the record indicates that the first six months of delay were due to anything but court congestion and normal administrative difficulties. *See Smith v. United States,* 379 A.2d 1166, 1167 (D.C. 1977). Accordingly, this period does not weigh heavily against the government. The period between September 23, 1983, and the rescheduled trial date of February 29, 1984, occasioned as it was by a government-requested continuance, but not owing to prosecutorial negligence, "should be counted only slightly more heavily against the government" than the first period.

*Graves, supra* note 6, 490 A.2d at 1093. The period between dismissal of the first indictment on February 29, 1984, and reindictment on May 2, 1984, where such reindictment is based on the same alleged criminal conduct as the previous indictment, should be viewed as institutional delay. The next two periods of pretrial delay mirror the first two as to both the duration of the delays and the reasons therefor. The five-month delay between reindictment on May 2, 1984, and the scheduled trial date of October 19, 1984, is attributable to the normal congestion of the trial court's calendar. The responsibility for the delay between October 22, 1984 and February 12, 1985, as with the second period, "must rest with the government rather than with the defendant," *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192, and should be weighted slightly more heavily than the period between indictment and the originally scheduled trial date. *See Graves, supra* note 6, 490 A.2d at 1093.

On February 12, 1985, before the jury was sworn, appellant expressed to the court his dissatisfaction with appointed counsel and requested that the court appoint new counsel before commencement of trial. Appellant also reasserted his complaint that he had not been given a speedy trial. The trial court was thus faced with contrary requests by appellant, one urging expedition of the proceedings and one urging further delay. The court appointed new counsel for appellant, but stated that

---

**7.** The government contends that the relevant period is actually twenty-two months because appellant was not "incarcerated or subjected to substantial restrictions on [his] liberty" between February 29, 1984, when the first indictment was dismissed for want of prosecution, and May 2, 1984, when appellant was reindicted for the same conduct alleged in the original indictment. *See United States v. Loud Hawk,* 474 U.S. 302, 310–12, 106 S.Ct. 648, 653–54, 88 L.Ed.2d 640 (1986). In either event, the speedy trial claim has prima facie merit. That there was a two-month period during which appellant was not subject to the restraints on liberty that are the object of the right to a speedy trial is a circumstance which will be balanced in the context of all the circumstances.

**8.** The Court in *Barker* stated:
A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
*Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192. In addition, this court has added a fourth category, "significant" delay, for government action deemed "less culpable than deliberate foot-dragging to gain tactical advantage but more culpable than the neutral category exemplified by failure to advance trial dates due to court congestion." *Graves, supra* note 6, 490 A.2d at 1092. *See Bethea v. United States,* 395 A.2d 787, 791–92 (D.C.1978).

this would currently dispose of his speedy trial claim. The period of delay between February 12, 1985, and trial two months later must be chargeable to appellant and not the government. Appellant's request for new counsel "serve[d] to justify appropriate delay." *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192.

In *Barker,* the Supreme Court stated that "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. Appellant raised his speedy trial objection several times, the earliest occasion being his second arraignment on May 16, 1984. He also objected through counsel at the October 22, 1984, and February 12, 1985, proceedings. Thus appellant did not affirmatively assert his right to a speedy trial until nearly fourteen months after his original indictment.[9]

The fourth factor enunciated in *Barker* regarding speedy trial claims concerns the extent to which the defendant has been prejudiced by the delay. Delays of more than a year are presumptively prejudicial. *Graves, supra* note 6, 490 A.2d at 1091; *Tribble v. United States,* 447 A.2d 766, 768 (D.C.1982). Prejudice to the defendant should be analyzed in terms of the interests that the right to a speedy trial was designed to protect, *viz.,* preventing oppressive pretrial incarceration, minimizing the anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. *Graves, supra* note 6, 490 A.2d at 1101 (citing *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193). Of the foregoing interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Graves, supra,* 490 A.2d at 1101 (quoting

*Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193). There is prejudice, for example, "if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193.

At a status hearing on May 26, 1983, appellant was released from jail on his personal recognizance, and the record does not reveal that he was further incarcerated through the remainder of the proceedings.[10] Appellant's anxiety was expressed on several occasions, most notably at his second arraignment on May 16, 1985, when both he and his counsel noted his distress over "going around being accused" for months without the culmination of a trial.[11] Appellant contends that his defense to the charges was impaired by the several delays. Specifically, one witness was alleged to have forgotten the incident, and another "who had previously been favorable to [appellant] had refuted his statement by the time of trial." The government, on the other hand, echoed the observation in *Barker* that the record generally does not show what has been forgotten. That is, "when considering faded memories, the court is in the realm of speculation." *Head v. United States,* 451 A.2d 615, 622 (D.C. 1982). This court has stated that the accused has a duty to keep in touch with his witness to avoid the problem of faded memories. *See Sell, supra* note 6, 525 A.2d at 1026.

The value of appellant's witness was known to him immediately, and appellant could have taken steps to preserve this witness' memory.... Appellant may not predicate prejudice upon his own failure to enlist the aid of a witness until his memory has faded.

---

9. During this time, the government requested and received a continuance of the original September 23, 1983, trial date without objection from appellant. We observe, however, that at every proceeding subsequent to the date when appellant's speedy trial claim became presumptively meritorious, *i.e.,* March 23, 1984, appellant voiced his objection to the delay either personally or through counsel.

10. Appellant was incarcerated for the first two months after the indictment was filed as a result of other offenses unrelated to these proceedings.

11. The fact of appellant's assertion of his speedy trial right adds some weight to his position. *See Graves, supra* note 6, 490 A.2d at 1103.

*Id.* (quoting *Smith, supra,* 379 A.2d at 1167). Nor does appellant offer any explanation of why he did not take steps to preserve witness testimony. *See id.* "Thus, while appellant may have suffered some prejudice from his anxiety, we do not find that his defense was impaired, or that he suffered undue pretrial incarceration." *Head, supra,* 451 A.2d at 622.

Balancing the foregoing factors and other relevant circumstances, we conclude that appellant was not denied his right to a speedy trial. The total duration of delay was just over twenty-four months, for twenty-two of which appellant was not incarcerated. While this raises a presumption of prejudice to appellant, we find that the government convincingly rebutted the presumption, such that pretrial anxiety was the only actual prejudice endured by appellant. Moreover, the reasons for the delays in appellant's trial were due mainly to institutional factors, such as court congestion and witness failure to appear, and as such do not weigh gravely against the government. While appellant's displeasure with such delay was made clear to the courts, appellant was not incarcerated for most of the relevant period, and otherwise did not undergo substantial prejudice. We therefore conclude that appellant was not denied his Sixth Amendment right to a speedy trial.

## III. JURY INSTRUCTIONS

 Appellant also contends that the lower court erred in instructing the jury on assault with a dangerous weapon [12] because such crime is not a lesser-included offense of the charged offense, mayhem while armed. [13] He argues that assault with a dangerous weapon requires proof of

elements that are not required for a conviction of mayhem while armed. Specifically, he asserts that (1) mayhem while armed requires only possession or availability of a dangerous weapon during commission of the act of mayhem, while assault with a dangerous weapon requires actual use of the dangerous weapon; and (2) mayhem while armed does not require a showing of "apparent present ability" to commit an act of mayhem, whereas assault with a dangerous weapon requires proof of such ability to commit the assault. The government argues there is no question that appellant both possessed and used the weapon in question. [14] It also contends that the requirement of the apparent present ability to commit assault with a dangerous weapon is inherent in the requirement under mayhem that the government prove that the accused actually assaulted someone, causing permanent injury.

 This court has generally looked to three considerations in cases dealing with the propriety of trial court instructions on lesser-included offenses: (1) the underlying purposes of the statutes that set forth the offenses upon which the jury was instructed; (2) the particular elements of the respective offenses; and (3) the evidence adduced at trial relevant to each of the offenses. This court has repeatedly held that in order to justify submitting to the jury an instruction as a lesser-included offense, there must be an inherent relationship between the greater and lesser offenses, *i.e.,* they must relate to the protection of the same interests. *Ballard v. United States,* 430 A.2d 483, 486 (D.C.1981) (quoting *United States v. Whitaker,* 144 U.S.App.D.C. 344, 349, 447 F.2d 314, 319 (1971)); *Hall v. United States,* 343 A.2d 35, 39 (D.C.1975).

**12.** D.C.Code § 22–502 (1981) provides: "Every person convicted of an assault with intent to commit mayhem, or of an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than ten years."

**13.** D.C.Code § 22–506 (1981) provides: "Every person convicted of mayhem or of maliciously disfiguring another shall be imprisoned for not more than 10 years." The offense of mayhem while armed is a synthesis of § 22–506 and the statute that imposes an additional penalty for committing crimes of violence in the District of

Columbia when armed. *See* D.C.Code § 22–3202(a) (1981).

**14.** A pencil may in some circumstances be a dangerous weapon because it is capable of causing bodily harm. *See Josey v. United States,* 135 F.2d 809 (D.C.Cir.1943). We have noted that the best evidence of a weapon's dangerous character is the injury actually inflicted by it. *See Freeman v. United States,* 391 A.2d 239, 242 (D.C.1978).

*See Bridgeford v. United States*, 411 A.2d 633, 635 (D.C.1980) (holding that merger of two crimes does not occur where the proscriptive statutes protect different societal interests). In this case, it is clear that the relevant statutes are similar in purpose, in that each seeks to protect the societal and individual interest in the integrity of the human body. In this respect, the statutes differ only in the extent and manner of bodily intrusion proscribed thereby. Thus, as an initial matter, we find that D.C.Code §§ 22–502 and –506 (1981) are sufficiently related in purpose for the former to be considered a lesser-included offense of the latter.

We next turn to a consideration of the specific elements that must be proved to convict an accused of these two crimes. A crime can only be a lesser-included offense of another if its required proof contains some, but not all, of the elements of the greater offense. *Sansone v. United States*, 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965); *Anderson v. United States*, 490 A.2d 1127, 1129 (D.C. 1985). A lesser-included offense instruction is only proper where the charged greater offense requires the trier-of-fact to find a disputed factual element which is not required for conviction of the lesser-included offense. *Lightfoot v. United States*, 378 A.2d 670, 673 (D.C.1977) (quoting *Sansone, supra*, 380 U.S. at 350, 85 S.Ct. at 1009). The converse, however, is not true. That is, if the lesser offense requires proof of a fact that the greater offense does not, they are "separate and distinct" offenses and not susceptible of the lesser-included instruction. *Jones v. United States*, 401 A.2d 473, 475–76 (D.C.1979).

 The elements of mayhem while armed are: (1) an act causing permanent injury to another; (2) a general intent to do the injurious act; (3) willful and malicious commission of the act; and (4) being armed with or having readily available a dangerous weapon. *See Bridgeford, supra*, 411 A.2d at 635 n. 4; *and see* D.C.Code § 22–3202 (1981). The elements of "attempted-battery" assault with a dangerous weapon are: (1) an attempt or effort, with force or violence, to do injury to the person of another; (2) the apparent present ability to carry out such an attempt or effort; (3) a general intent to engage in the attempt or effort; and (4) a dangerous weapon used in the perpetration thereof. Criminal Jury Instructions for the District of Columbia, No. 4.12 (3d ed. 1978). *See Sousa v. United States*, 400 A.2d 1036, 1044 (D.C.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). *Accord McGee v. United States*, 533 A.2d 1268, 1269 (D.C. 1987) (explaining distinction between "attempted-battery" assault and "intent-to-frighten" assault).

The issue is thus whether the requirements of apparent present ability and use of the dangerous weapon are elements that must be proved for assault with a dangerous weapon but which need not be proved for mayhem while armed. As to the first of these, the requirement of apparent present ability to commit the assault is inherently contained in the requirement under mayhem while armed that permanent injury be inflicted. One cannot inflict permanent injury without having the apparent present ability to do so. As to the second, appellant points us to *Perkins v. United States*, 446 A.2d 19, 27 (D.C.1982), which dealt in part with whether assault with a dangerous weapon was properly instructed as a lesser-included offense of malicious disfigurement while armed. The court stated that

> [a]ssault with a dangerous weapon requires proof that the weapon actually was used in the assault while malicious disfigurement, with the punishment enhancement element of being armed, requires only proof that the accused was armed or had a dangerous weapon readily available.

*Perkins, supra*, 446 A.2d at 27.

In considering this issue, however, we must look not only to the elements of the respective offenses, but also to the actual evidence adduced at the trial. In *Jones v. United States*, 374 A.2d 854 (D.C.1977), we stated that "[i]n the disposition of the instructional issue in this case, we are controlled by the state of the evidence in the

record rather than an abstract reading and comparison of the statutes involved." *Id.* at 855 (citing *Hall, supra,* 343 A.2d at 39). *See also Ballard, supra,* 430 A.2d at 486. Thus, the question is not whether, in the abstract, assault with a dangerous weapon is necessarily established by proof of mayhem while armed, but rather whether, on these particular facts, assault with a dangerous weapon was sufficiently established by proof of mayhem while armed to warrant instructing the jury in the alternative. Basing the propriety of the lesser-included offense instruction on the evidence in the particular case avoids "invit[ing] the jury to pick between the felony and the misdemeanor so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge." *Sansone, supra,* 380 U.S. at 350 n. 6, 85 S.Ct. at 1009 n. 6.

 It is clear that in this case a jury could have found that appellant committed the assault with a dangerous weapon without concomitantly finding that he committed mayhem while armed. The evidence showed that while appellant and Jenkins were fighting, appellant, with a general intent to injure, struck Jenkins with pencil in hand, lodging the pencil in Jenkins' right eye. As such, there was sufficient evidence from which a reasonable juror could find that appellant committed assault with a dangerous weapon. There was also evidence, however, that appellant acted in self-defense, and that appellant did not realize the pencil was in his hand when he struck Jenkins. From this the jury could reasonably have concluded that appellant lacked the requisite malice to commit mayhem while armed. It is not sufficient to argue that assault with a dangerous weapon requires actual use of the weapon whereas mayhem while armed does not since, on these facts, appellant clearly satisfied the armament prong of both offenses. Accordingly, in view of the ele-

ments of the offenses and the evidence presented, assault with a dangerous weapon was a lesser-included offense of mayhem while armed, and the trial court was correct in so instructing the jury.[15]

There being no error warranting reversal, the judgment of conviction is

*Affirmed.*

---

**15.** *Appellant also contends his motion for judgment of acquittal should have been granted. Appellant moved for judgment of acquittal at the close of the government's case. The motion was denied and appellant did not renew it at the close of all the evidence. Thus, the court's re-* view is limited to the sufficiency of the total evidence in this case. *Wheeler v. United States,* 494 A.2d 170, 171–72 (D.C.1985). Viewing the evidence in the light most favorable to the government, as we must, it is clear that this contention is without merit.