**UNITED STATES of America, Plaintiff,**

v.

**Karl Lynn HUNT, Defendant.**

**No. CRIM. 02–198.**

United States District Court, S.D. Iowa.

Feb. 3, 2003.

Sheldon Halpern, Royal Oak, MI, for Karl Lynn Hunt (1), defendant.

Clifford D. Wendel, United States Attorney, Des Moines, IA, for U.S. Attorneys.

## MEMORANDUM OPINION AND RULING ON ADMISSIBILITY OF COUNT 4 EVIDENCE

VIETOR, Senior District Judge.

Defendant Karl Lynn Hunt is charged in a grand jury indictment with four offenses arising out of events that occurred on July 28, 2002. Count 1 charges defendant with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, Count 2 charges him with possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), Count 3 charges him with possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), and Count 4 charges him with obstruction of justice in violation of 18 U.S.C. § 1510(a).

On December 30, 2002, at the conclusion of an evidentiary hearing on defendant's motion to suppress evidence, I found that a detention of defendant and search of a vehicle violated his Fourth Amendment rights, sustained the motion, and ordered that the government shall not introduce at the trial evidence of the items seized in the search of the vehicle, and not introduce at the trial any evidence of statements that

the defendant made in response to interrogation. *See* Mem. Op. Re Suppression of Evidence filed on January 9, 2003. The ruling clearly applies to Counts 1, 2, and 3, the counts charging violations of the controlled substances law. Later I received briefing of counsel regarding whether, on the trial of Count 4, the obstruction of justice charge, the government will be allowed to place before the jury evidence that the defendant, while in post-arrest custody on July 28, 2002, made a bribe-offering statement that is the basis of Count 4. A further issue on which I received briefing is, if evidence of such statement is admissible, what additional evidence may be offered by the government to provide the context of the alleged statement?

## FACTUAL BACKGROUND

On July 28, 2002, Iowa State Patrol Trooper Jason Bardsley was on patrol on Interstate 80 in Pottawattamie County, Iowa. He observed a vehicle proceeding east on the interstate at a speed substantially in excess of the posted 65 mile-per-hour speed limit, and he stopped the vehicle. The driver of the vehicle was Pamela Denise Taylor. Seated in the front passenger seat was the defendant, Karl Lynn Hunt. The vehicle had been leased by defendant from Avis Rent a Car System, Inc. in Los Angeles, California.

The trooper detained defendant and Ms. Taylor far beyond the time that was reasonably necessary to process the traffic citation. He engaged in a broad-ranging and rather accusatorial interrogation of defendant and Ms. Taylor. Finally he called for backup assistance and a drug-detecting canine, which did not arrive until more than 50 minutes after the initial stop of defendant's vehicle. The canine alerted on the car. The troopers then searched the car and found controlled substances. Defendant and Ms. Taylor were arrested on state drug charges.

I found and concluded, at the conclusion of the suppression hearing, that the trooper did not have articulable reasonable suspicion to justify the prolonged detention of the defendant and Ms. Taylor, and suppressed evidence seized in the search of the vehicle and suppressed, as fruit of the poisonous tree, evidence of later statements made by defendant in response to in-custody interrogation.

Evidence received at defendant's detention hearing on October 3, 2002, disclosed the following version of the government's case on Count 4. After defendant and Ms. Taylor were arrested they were taken to the Iowa State Patrol Post in Council Bluffs, Iowa. Steven Lamp, a Special Agent with the Iowa Division of Narcotics Enforcement, who is also deputized federally with the Omaha office of the federal Drug Enforcement Administration, was called to the Iowa State Patrol Post. Defendant had already been given his *Miranda* warnings and interrogated by Trooper Bardsley, who had obtained incriminating answers from him. When Agent Lamp approached defendant and showed him his credentials, he asked him if he would be willing to cooperate. Defendant said "It's Steve?" Agent Lamp replied "Yeah." Defendant then said "Steve, how much money would it take for you to keep the dope and for us to go home?" This alleged statement resulted in the Count 4 charge.

## ADMISSIBILITY OF STATEMENT

The first issue is whether the alleged statement of defendant to Agent Lamp is admissible on Count 4, or must be excluded as fruit of the poisonous tree because defendant's detention at the time was an unreasonable seizure prohibited by the Fourth Amendment to the United States Constitution.

■ The United States Supreme Court created the exclusionary rule to effectuate the Fourth Amendment right of all citizens to be secure against unreasonable searches and seizures. *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Under the rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the person whose Fourth Amendment rights were violated. *Mapp v. Ohio,* 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and its progeny. This prohibition extends as well to the "fruits" of illegally seized evidence. *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ Application of the exclusionary rule requires an examination of the relationship between the unlawful police conduct and the evidence sought to be suppressed. The Supreme Court has made clear that suppression is not required simply because the evidence would not have been obtained "but for" the unlawful detention. *New York v. Harris,* 495 U.S. 14, 17, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990); *Dunaway v. New York,* 442 U.S. 200, 217, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Rather, evidence is suppressible only if it is the direct or indirect product of the initial illegality. *Wong Sun,* 371 U.S. at 484, 83 S.Ct. 407; *see also United States v. Duchi,* 944 F.2d 391, 395 (8th Cir.1991).

■ Defendant's alleged statement to Agent Lamp at the Iowa State Patrol Post was not a product of his unlawful detention. *Duchi,* 944 F.2d at 395. Instead, making the alleged statement constituted the commission of a new crime, regardless of whether his detention at the time was lawful. When a defendant's response to an unlawful detention is itself a new and distinct crime, exclusion of evidence of that crime is not appropriate. *United States v. Sprinkle,* 106 F.3d 613, 619 (4th Cir.1997); *United States v. Garcia–Jordan,* 860 F.2d

159, 161 (5th Cir.1988); *United States v. Bailey,* 691 F.2d 1009, 1016–17 (11th Cir. 1982). The reason for this is obvious. "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *Bailey,* 691 F.2d at 1017.

The exclusionary rule was not intended to provide license for victims of police misconduct to commit new and separate crimes. Instead the "prime purpose of the rule, if not the sole one, is to deter future unlawful police conduct." *United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Suppressing evidence of defendant's alleged statement would do nothing to advance this goal. In *Duchi,* the Eighth Circuit cautioned:

> The exclusionary rule, as a judicial creation, can only be justified where the benefits of suppressing the information outweigh the costs. If exclusion will result in no appreciable deterrent effect on police then the evidence in question is too far removed from the original constitutional violation to constitute a fruit of that transgression.

944 F.2d at 396. For suppression to have a deterring effect in this case, I would have to assume that Trooper Bardsley unlawfully detained Hunt with the expectation that he would subsequently make a bribe-offering statement. It would require a wild stretch of one's imagination to make such an assumption; there is no evidentiary basis for it. "Police do not detain people hoping that they will commit new crimes in their presence; that is not a promising investigative technique when illegal detention exposes the police to awards of damages." *United States v. Pryor,* 32 F.3d 1192, 1196 (7th Cir.1994). Thus the benefits gained by excluding evidence of defendant's alleged statement would be minimal, if not non-existent, and

the costs would be high. *Id.* Suppression of evidence of defendant's alleged statement to Agent Lamp in the trial of Count 4 is not justified, and such evidence is admissible.

## ADMISSIBILITY OF "CONTEXT" EVIDENCE

Having determined that evidence of defendant's alleged statement to Agent Lamp is admissible, the next issue is what evidence may the government introduce at trial to provide the context of the alleged statement.

Although suppression of the evidence obtained during defendant's detention and subsequent search is appropriate for counts 1, 2, and 3, it does not necessarily follow that all such evidence must be suppressed at the trial of Count 4. "[T]he exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Calandra,* 414 U.S. at 348, 94 S.Ct. 613. "As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* A court, therefore, must balance the costs and benefits of applying the exclusionary rule to a particular proceeding. *Id.* at 349, 94 S.Ct. 613.

In this case, denying the jury evidence supplying the context of defendant's alleged bribe-offering statement would not advance the remedial objectives of the exclusionary rule. These objectives are fully satisfied by forbidding the use of the illegally obtained evidence to prove Counts 1, 2, and 3. Any incremental deterrent effect that might be achieved by excluding relevant context evidence in the trial on Count 4 is speculative at best.

Giving the jurors an incomplete view of the facts would unduly impair their ability to reach a just verdict. As the Eighth Circuit has observed, "a jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *United States v. Moore,* 735 F.2d 289, 292 (8th Cir.1984).

The government will be allowed to offer evidence of defendant's arrest in order to provide the context of the Count 4 charge, notwithstanding the court's order to suppress the evidence as it relates to Counts 1, 2, and 3. This, of course, does not give the government carte blanche to produce in detail evidence of all the circumstances giving rise to the arrest. Rather, it should be sufficient for the government to introduce only enough evidence to establish the fact that, at the time defendant made his statement to Agent Lamp, he was in custody after being arrested on drug charges.

## RULING

In the trial of Count 4, evidence of defendant's alleged bribe-offering statement to Agent Lamp is admissible as well as any other relevant evidence of *subsequent* statements and conduct of defendant. Evidence of the context in which the alleged statement was made is admissible in the trial of Count 4, at least to the extent that evidence may be produced that defendant, at the time he made the statement, was in custody after having been arrested on drug charges. How much additional evidence, if any, about the arrest background that may be placed before the jury to effectively provide the context will rest in the sound discretion of the judge who presides over the trial of Count 4.