**Richard N. SILVER, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 12–CF–304.**

District of Columbia Court of Appeals.

Argued Feb. 7, 2013.

Decided Aug. 15, 2013.

---

**5.** Brief for Appellant at 7.

Montrell L. Scaife for appellant.

John V. Geise, Assistant United States Attorney, for appellee. Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Elizabeth H. Danello, Claire Pozos, and Karen L. Shinskie, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and FARRELL, Senior Judge.

WASHINGTON, Chief Judge:

Richard Silver appeals his conviction for obstructing justice.[1] He argues that the

---

1. D.C.Code § 22–722(a)(6) (2001).

trial court erred by rejecting his claim of a speedy trial violation and by allowing testimony regarding evidence from an illegal search. He also argues that the evidence was insufficient to support his conviction. For the following reasons, we affirm.

## I.

On May 7, 2009, two unnamed individuals reported to Officer Jason Bagshaw that their home had been burglarized. Officer Bagshaw went to Silver's home to investigate the complaint at approximately 2:00 a.m. As he approached the home, he saw Silver approach Kevin Boyd and Rodney Williams, who were seated in Silver's Cadillac which was parked in the rear of Silver's home. Silver came outside and spoke with Officer Bagshaw and other police officers and consented to a search of his vehicle. After the search, the officers separately walked Silver, Boyd, and Williams up the street to conduct a show-up identification procedure; only Boyd was identified as possibly involved in the burglary.

After the show-up, the officers escorted Silver back to his home. Therein, the officers obtained purported consent to search the home from all the occupants. During the search, the officers found a jacket containing seventeen rocks of cocaine hanging on the door of Silver's bedroom. Silver was arrested and charged with possession with intent to distribute cocaine ("PWID") on May 20, 2009.

On July 11, 2009, the police executed a search warrant at Williams' home. In Williams' bedroom, they found letters postmarked June 5 and 18, 2009, addressed to Williams from Silver. In the first letter, Silver asked Williams to "step up and help [him] out" by telling the police that the coat found in Silver's bedroom and the "rocks" therein belonged to Williams, and to tell the police that Williams did not come forward sooner because he was

afraid. He urged Williams to do it as soon as possible because if Williams put it off until the next month, as the two had previously discussed, it would look like Williams was lying for Silver. Silver reasoned that Williams would only get two years of probation because he had a clean record, whereas Silver was facing ten to fifteen years' imprisonment. In return, Silver promised Williams that he would give him his car and North Face jacket and assured Williams that his lawyer would take care of him.

In the second letter, Silver conveyed his anger that Williams had not come forward. He warned Williams that "what goes around comes around" and promised that "when or if I ever do make it out of this shit, you have to see me. Real talk we got to fight, Dog, me and you."

On January 20, 2010, Silver was indicted for PWID and obstructing justice. Silver moved to suppress the drug evidence and the trial court granted his motion on December 13, 2011, finding that the consent to search Silver's home was not voluntarily given. The government dismissed the PWID charge and proceeded to trial on the obstructing justice charge. A jury convicted Silver of obstructing justice on December 15, 2011.

## II.

Silver first argues that his Sixth Amendment right to a speedy trial was violated because eight months had passed between his arrest and indictment, and another twenty-two months had passed before the commencement of his trial. He claims that he suffered anxiety due to the delay and was unfairly prejudiced by it because one of his witnesses passed away while he was awaiting trial.

"[W]e assess a speedy trial claim in light of four factors: the '[l]ength of the

delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *Diggs v. United States,* 28 A.3d 585, 599 (D.C.2011) (quoting *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). "None of these factors is 'a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial,' and the court must undertake a sensitive balancing process of all four factors in order to reach its decision." *Dickerson v. United States,* 650 A.2d 680, 684 (D.C.1994) (quoting *Barker,* 407 U.S. at 533, 92 S.Ct. 2182). In reviewing the trial court's decision on a defendant's speedy trial claim, "'we are bound by its findings of fact unless they are plainly wrong or without evidence to support them,' but 'we may reverse ... for errors of law.'" *Hartridge v. United States,* 896 A.2d 198, 207 (D.C.2006) (quoting *Graves v. United States,* 490 A.2d 1086, 1091 (D.C.1984) (en banc), *partially overruled on other grounds by United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986)).

■ Because Silver was never arrested for obstructing justice and because he was never tried for PWID, the relevant starting point on the speedy-trial clock is January 20, 2010, the day he was indicted for obstructing justice. *Dillingham v. United States,* 423 U.S. 64, 65, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (noting that the clock starts for speedy-trial purposes with "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge"). As such, the delay in this case was approximately twenty-two months, giving prima facie merit to Silver's claim, "creat[ing] a presumption of prejudice [to Silver], and shift[ing] the burden to the government to justify the delay." *Ward v. United States,* 55 A.3d 840, 844–45 (D.C. 2012) (quoting *(Gwendolyn) Moore v. United States,* 675 A.2d 71, 74 (D.C.1996)) (noting that a delay exceeding one year

gives prima facie merit to a speedy-trial claim).

■ We are satisfied that the government has met its burden of justifying the delay. The record shows that approximately fourteen months of the delay are attributable to Silver. During that time he requested three continuances; refused to comply with court orders to submit writing exemplars pretrial which caused the government to seek a continuance; changed attorneys; and failed to appear in court on a trial date. Of the remaining time, four months were due to continuing Silver's arraignment in order to permit the government additional time to writ in Silver from another jurisdiction, three weeks were due to the trial court's allowing the parties time to discuss the possibility of a disposition, and five months were due to the trial court's setting the trial date for October. Thus, none of the delay weighs heavily against the government. *See Diggs,* 28 A.3d at 599–600 (explaining that scheduling difficulties are neutral and therefore "no blame can be assessed against either party"); *Hammond v. United States,* 880 A.2d 1066, 1080 (D.C.2005) ("Delay that is attributable to a valid reason is justifiable delay and is not weighed against the government at all."), *abrogated in part on other grounds by Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

Next, although Silver twice filed formal motions to dismiss for lack of a speedy trial, the weight to be given his assertions of his speedy trial right is diminished by his own actions. First, in his motions to dismiss, he failed to request a prompt trial in the alternative. We have repeatedly found such an omission important in deciding whether the appellant's assertions of his speedy trial right should be given significant weight. *See, e.g., Diggs,* 28 A.3d at 600; *Hartridge,* 896 A.2d at 211;

*Graves,* 490 A.2d at 1099. Second, Silver refused to comply with court orders requiring him to furnish hand-writing exemplars in advance of trial. Initially, Silver's trial was scheduled to commence on October 12, 2010; however, because he failed to timely submit the exemplars,[2] the government requested a continuance which Silver did not contest. We have previously stated that an appellant's decision not to object to a continuance diminished in part the weight to be given his assertion of his speedy-trial right. *See Hartridge,* 896 A.2d at 211. Finally, four months after Silver filed his second motion to dismiss, he failed to appear for trial, which was then scheduled for July 11, 2011, and therefore the trial court had to again reschedule.

Finally, Silver argues that he was prejudiced because (1) he suffered anxiety and concern since he was facing two felony charges which could result in consecutive sentencing in addition to the time added as a result of his parole violation, and (2) one of his witnesses died while he was awaiting trial. "Prejudice ... is to be assessed in light of the interests which the speedy trial right was designed to protect, namely: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." *Graves,* 490 A.2d at 1101 (noting that the most serious is number (3)).

We have previously said that "some [anxiety and concern] is inevitable simply by virtue of the existence of impending charges" and that an "[a]ppellant's assertion of his speedy trial right also adds some weight to his claim of anxiety." *Id.*

at 1103. We have also considered important an appellant's failure to contend that his alleged anxiety and concern had a specific impact on his health or personal or business affairs, *see, e.g., id.* at 1104; *Diggs,* 28 A.3d at 601, *Hartridge,* 896 A.2d at 211, and have stated that prior experience with the criminal justice system tends to minimize an appellant's anxiety, *Graves,* 490 A.2d at 1104. Here, Silver has only alleged general anxiety and concern, and at the time he was arrested in this case, he had been well acquainted with the criminal justice system.[3]

Moreover, Silver has not alleged any meaningful prejudice to his defense. While he states that his uncle, who would have testified "about the coercion used in securing the consent to search forms at the hearing on the motion to suppress," had passed away, he does not explain how this witness would have aided in his defense to obstructing justice.[4] The absence of any showing of prejudice to the defense weighs heavily in this court's determination of whether Silver was deprived of his right to a speedy trial. *Hartridge,* 896 A.2d at 212.

Balancing all the factors in this case, we conclude that Silver was not deprived of his right to a speedy trial.

### III.

Silver next argues that the trial court plainly erred by allowing the government to present to the jury testimony about the cocaine and the circumstances surrounding its discovery, in contravention of the exclusionary rule. He asserts that because the

---

**2.** Silver submitted one exemplar on October 12, 2010, the day of trial, and submitted the remaining exemplars in December 2010.

**3.** As of this trial, Silver had been arrested nine times and convicted of five offenses. *See Hartridge,* 896 A.2d at 211 (quoting *Turner v.*

*United States,* 622 A.2d 667, 679 (D.C.1993)) ("[A]n appellant's other contact with the justice system ... lessens any anxiety ... pending charges caused him.").

**4.** Even without this witness, Silver prevailed on his motion to suppress.

trial court found that the search of his home was unconstitutional under the Fourth Amendment, all evidence should have been excluded as fruit from the poisonous tree. He further asserts that the prejudicial effect of the evidence outweighed its probative value. While counsel acknowledges that the plain error standard of review is applicable because no objections were made below, and the record shows we may even be able to apply the invited error doctrine, we believe it is appropriate to more expansively review the issue of whether improperly obtained evidence should be suppressed in a trial for an offense committed after the violation of Fourth Amendment rights, as we have not had occasion to address this issue previously.

 Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). While the rule "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect," "[it] has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Id.* at 348, 94 S.Ct. 613. Application of the rule is required only where it would "result in appreciable deterrence," *United States v. Leon*, 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (internal quotation marks omitted) (quoting *United States v. Janis*, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)), and where "the benefits of deterrence outweigh the costs," *Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

 After granting Silver's motion to suppress the drug evidence found in his home in connection with the drug possession charge, the parties agreed that the government could introduce evidence regarding the discovery of the drugs as part of the government's case-in-chief in the obstruction case, and the government proceeded accordingly. We are satisfied that the suppression of the evidence in connection with the PWID charge, while allowing the presentation of evidence of the events surrounding the discovery of the drugs to provide context for Silver's letters in the prosecution for the obstruction of justice charge, provided an adequate deterrent to police misconduct. *See State v. Battle*, 256 N.J.Super. 268, 606 A.2d 1119, 1123 (Ct. App.Div.1992) (permitting the use of evidence of the events leading up to defendant's assault on a police officer, including the officer's observance of what he thought was marijuana, after suppressing it as to the possession counts because such evidence was essential to the "truth seeking function" of the trial (quoting *James v. Illinois*, 493 U.S. 307, 311, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990))); *see also United States v. Awadallah*, 349 F.3d 42, 74–75 (2d Cir.2003) ("So long as the deterrent force created by exclusion has already been brought to bear, there is no significant need to suppress the evidence in a subsequent prosecution for criminal conduct ... that post-dates the Fourth Amendment violation."). In order to determine whether there is any likely future deterrent effect sufficient to justify suppressing evidence in a subsequent prosecution, courts weigh the likelihood of deterrence against the costs, which requires analyzing whether the police were likely to have contemplated and been motivated by the particular challenged use of the evidence. *See, e.g., United States v. Varela*, 968 F.2d 259, 261–62 (2d Cir.1992); *United States v. Lopez–Martinez*, 725 F.2d 471, 476 (9th Cir.1984); *United States v. Paepke*, 550 F.2d 385, 392–93 (7th Cir. 1977); *United States v. Turk*, 526 F.2d 654, 667 (5th Cir.1976); *Battle*, 606 A.2d at

1123. In applying that test in this case, suppression would be warranted only if we could reasonably conclude that the officers conducted the unlawful search with the expectation that Silver would subsequently attempt to persuade another to "take the charge" for him. Because there is no evidence in the record from which a reasonable person could conclude that the police misconduct would lead appellant to attempt to obstruct justice by suborning perjury, we are satisfied that "[a]ny incremental deterrent effect that might be achieved by excluding relevant context evidence in the trial on [obstructing justice] is speculative at best." *United States v. Hunt*, 244 F.Supp.2d 1010, 1014 (S.D.Iowa 2003) (permitting admission of evidence regarding the circumstances surrounding unlawful search and seizure of defendant in trial for obstructing justice where the same evidence was suppressed for PWID counts), *aff'd*, 372 F.3d 1010 (8th Cir.2004). Accordingly, we see no error in the trial court's admission of the evidence of the search and discovery of the drugs under any standard of review.

## IV.

Finally, Silver argues that the evidence was insufficient to support his conviction for obstruction of justice because Williams was not on the government's witness list, and the government did not prove that he specifically intended to obstruct justice. Silver's arguments are without merit.

 In evaluating the sufficiency of the evidence, we view the evidence "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact...." *(John) Moore v. United States*, 927 A.2d 1040, 1049 (D.C.2007) (quoting *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987)) (internal quotation marks omitted). To prove obstruction of justice,

the government must prove that the defendant "[c]orruptly, or by threats of force, any way obstruct[ed] or imped[ed] or endeavor[ed] to obstruct or impede the due administration of justice in any official proceeding." D.C.Code § 22–722(a)(6). "The intent required for obstruction of justice often 'must be inferred from the context and nature of the alleged criminal conduct.'" *Campos–Alvarez v. United States*, 16 A.3d 954, 965 (D.C.2011) (quoting *McBride v. United States*, 393 A.2d 123, 131 (D.C.1978)).

 The government presented evidence at trial that a month after Silver was arrested for PWID, he wrote to Williams asking him to claim responsibility for the drugs, and when Williams failed to come forward, Silver sent another letter threatening to fight Williams. Although Silver testified that he was merely imploring Williams to tell the truth, the jury could disbelieve his explanations and reasonably conclude that Silver was attempting to obstruct justice by pressuring Williams to lie to the police about the ownership of the recovered cocaine. Additionally, because the government was only required to prove that Silver endeavored to obstruct or impede the due administration of justice in a pending investigation and he did so with the intent to undermine the integrity of the pending investigation, *Smith v. United States*, 68 A.3d 729, 742 (D.C.2013), Silver's argument that Williams was not a witness is irrelevant.

## V.

Accordingly, we affirm Silver's conviction.

*So ordered.*